VAN NESS FELDMAN LLP
Jenna R. Mandell-Rice, Pro Hac Vice Pending
1191 Second Avenue, Suite 1800
Seattle, WA 98101
T: 206-623-9372
E: jrm@vnf.com

VAN NESS FELDMAN LLP
Allison E. McAdam, SBN 226836
3717 Mt. Diablo Blvd., Suite 200
Lafayette, CA 94549
T: 925-282-8016
E: amcadam@vnf.com

*Attorneys for Proposed-Intervenor*
*The State Water Contractors*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, CENTER FOR BIOLGICAL DIVERSITY, and FRIENDS OF THE RIVER, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF RECLAMATION, NATIONAL MARINE FISHERIES SERVICE, DOUG BURGUM, in his official capacity as the Secretary of the Interior, HOWARD LUTNICK, in his official capacity as the Secretary of Commerce, and SCOTT CAMERON, in his official capacity as the Acting Commissioner of the U.S. Bureau of Reclamation, <br><br> Defendants. | Case No. 2:26-cv-00671-JLT-EPG <br><br> **NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES OF THE STATE WATER CONTRACTORS** <br><br> Judge: Hon. Jennifer L. Thurston <br> Date:  May 21, 2026 <br> Time:  9:00 am <br> Crtrm: 4 |

NOTICE OF MOT., MOT. TO INTERVENE, &
MEM. OF POINTS & AUTH. OF SWC

2:26-cv-00671-JLT-EPG

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 21, 2026, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Jennifer L. Thurston, located in the United States District Court for the Eastern District of California, Sacramento Division, the State Water Contractors ("SWC"), including its member agencies, will and hereby does move for leave to intervene in the above-entitled action.

By this Motion, SWC respectfully requests leave to intervene as a matter of right pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a)(2), or alternatively, as a matter of permission pursuant to FRCP 24(b).  This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jennifer Pierre, a proposed answer in intervention, a proposed order, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

SWC conferred with counsel to the parties by email on April 2, 2026, requesting each parties' position with respect this motion.  All parties have reserved their position on this Motion.

Dated: April 16, 2026

Respectfully submitted,

VAN NESS FELDMAN LLP

*s/ Allison McAdam*
Allison McAdam, SBN 226683

*s/ Jenna R. Mandell-Rice*
Jenna R. Mandell-Rice, Pro Hac Vice Pending

*Attorneys for Proposed-Intervenor*
*The State Water Contractors*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................................. 2

    A.    The San Francisco Bay/Sacramento-San Joaquin River Delta, the SWP, and SWC ...... 2

    B.    Coordinated Operations of the CVP and SWP ............................................................. 4

    C.    Regulation of the CVP and SWP Under the Federal Endangered Species Act ............... 5

    D.    The Current Dispute ................................................................................................... 6

III.  ARGUMENT ...................................................................................................................... 6

    A.    SWC is Entitled to Intervene as a Matter of Right ....................................................... 6

        1.    The Motion to Intervene is Timely .......................................................................... 7

        2.    SWC and Its Members Have a Significant Protectable Interest in the Subject of the Litigation .................................................................................... 7

        3.    SWC's Rights May be Impaired by the Outcome of this Case ............................ 10

        4.    SWC's Interests are not Adequately Represented ................................................ 11

    B.    In the Alternative, SWC Should be Granted Permissive Intervention ........................ 14

IV.  CONCLUSION ................................................................................................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The State Water Contractors ("SWC"), including its member agencies, respectfully requests leave to intervene in this action to protect its interests in the State Water Project ("SWP"), the operations of and permits for which may be impaired by the claims brought by San Francisco Baykeeper, Center for Biological Diversity, and Friends of the River (collectively, "Plaintiffs") against the U.S. Bureau of Reclamation ("Reclamation"), the National Marine Fisheries Service ("NMFS"), Doug Burgum, Howard Lutnick and Scott Cameron (collectively, "Federal Defendants").[1] Although Plaintiffs have only brought suit against Federal Defendants with respect to the operation of the Central Valley Project ("CVP"), the CVP is jointly operated with the SWP. The permit at the center of Plaintiffs' claims—the incidental take statement ("ITS")—that Plaintiffs allege is being violated and the biological opinion that Plaintiffs allege must undergo reinitiation of consultation, also cover the operations for the SWP.

The SWP is the largest state-owned and operated water and power delivery system in the United States and drives California's quality of life and economic vitality. SWC is a non-profit association that represents the legal, policy, and regulatory interests of 27 public water agencies that hold contracts for SWP water supplies and who are responsible for the capital and operations and maintenance costs of the SWP. Through their participation in the SWP, SWC's member agencies provide water to 27 million Californians and 750,000 acres of farmland in a geographic area that spans from Yuba City in the north to San Diego County in the south.

In 2024, the federal and state governments—through Reclamation and California

---

[1] SWC's interests may not be aligned with either Plaintiffs or Federal Defendants in this litigation. However, for purposes of party alignment, SWC seeks to intervene as a proposed-intervenor at this time.

Department of Water Resources ("DWR")—put forth a long-term operations plan for the coordinated operation of the SWP and the CVP. Proposed modifications to the existing operations of the SWP and CVP as described in the long-term operations plan were evaluated in the 2024 biological opinion ("2024 BiOp"). The ITS that accompanies the 2024 BiOp is among the authorizations for the operation of both the SWP and the CVP.

Plaintiffs allege that Reclamation's operation of the CVP violated sections 7 and 9 of the Endangered Species Act ("ESA") by failing to comply with the 2024 BiOp and exceeding the incidental take thresholds set forth in the ITS. ECF No. 1 ¶ 7–9. Plaintiffs seek declaratory and injunctive relief compelling Reclamation to reinitiate ESA section 7 consultation in order to produce a new biological opinion. ECF No. 1 ¶ 9. Because the SWP must comply with the same ITS that Plaintiffs allege is being violated and because the SWP's operations are governed by the 2024 BiOp for which Plaintiffs assert reinitiation of consultation is required, the claims brought and relief requested also necessarily implicate and impact the SWP. Thus, this litigation jeopardizes the unique, protectable interests of SWC and its member agencies in SWP water supplies. SWC, therefore, should be allowed to intervene as a matter of right because the disposition of this action may as a practical matter impair or impede the ability of SWC and its member agencies to protect their interests, no existing party adequately represents those interests, and this Motion is timely. In the alternative, SWC meets the criteria for permissive intervention.

## II.  STATEMENT OF FACTS

### A.  The San Francisco Bay/Sacramento-San Joaquin River Delta, the SWP, and SWC

The San Francisco Bay/Sacramento-San Joaquin River Delta ("Delta") is the largest estuary on the west coast of the United States. Pierre Decl. ¶ 5. It is an integral part of California's water delivery system—serving as a conduit for water that serves millions of people throughout Northern, Central, and Southern California. *Id.* Water from the Delta is indispensable to the agricultural

industry and businesses that drive the State's economy. *Id.* The Delta also supports an important ecosystem, serving as a migratory corridor for multiple species of anadromous fish and habitat for resident fish, some of which are listed as threatened or endangered under the ESA. *Id.*

The SWP is owned by the State of California and is operated by DWR. *Id.* ¶ 9. The SWP includes 34 reservoirs; 20 pumping plants; 4 pumping-generating plants; 5 hydroelectric power plants; and about 700 miles of pipelines and open canals that collectively stretch from Oroville Reservoir, located on the Feather River in the north, to Perris Reservoir, located in Riverside County in the south. *Id.* ¶ 10. By means of pumping facilities located near Tracy, California, water is pumped by the SWP from the southern end of the Delta for delivery to SWC's member agencies and ultimately, to end-users in the southern San Francisco Bay area via the South Bay Aqueduct, and in the San Joaquin Valley, along the Central Coast, and in Southern California via the California Aqueduct. *Id.* ¶ 11. Particularly during winter months, when water is not generally needed for agricultural uses, SWP facilities pump water from the Delta to storage in San Luis Reservoir, a joint use facility shared by the state with the federal government that is located near the City of Los Banos. *Id.* Such water is stored in the San Luis Reservoir until it is needed for irrigation, municipal, and other uses. *Id.* Two of every three Californians receive water from the SWP. *Id.* ¶ 12. California relies on the SWP as the backbone of the state's water supply delivery system. *Id.* Without the SWP, California would need to replace 2.5 million acre-feet of water annually to meet state demand, or enough to supply approximately 5 million homes for a year. *Id.*

SWC is a non-profit association of 27 public water agencies from Northern, Central and Southern California that were established under the laws of the State of California. *Id.* ¶ 2. Each SWC member is party to a long-term water supply contract with DWR to receive water from the SWP and to pay for the construction, operation and maintenance of the system. *Id.* All but 3 SWC member agencies receive SWP supplies diverted from the Delta. *Id.* ¶ 13.

SWC's member agencies have the right to use the SWP conveyance system, and to receive a contracted water amount pursuant to an annual allocation that DWR makes based on availability, which depends on precipitation, snowpack, available storage, water quality and other environmental regulations, and other factors. *Id.* ¶ 14. These water supply contracts are central to the SWP's construction and operation as the water contractors fund all SWP capital, and operating and maintenance costs associated with storage and conveyance. *Id.* ¶¶ 15, 16.

SWC is authorized to exercise the common powers of its member agencies, and to commence and participate in litigation on their behalf. *Id.* ¶ 4.

**B.      Coordinated Operations of the CVP and SWP**

The CVP and SWP are the foundation of California's water storage and delivery systems. *Id.* ¶ 6. The CVP and SWP include a complex system of reservoirs, canals, and water pumps spanning much of the state. *Id.* Water released from upstream reservoirs, flowing naturally through the river system and Delta, is exported through SWP pumps at the northern end of the Delta and CVP and SWP pumping plants at the southern end of the Delta. *Id.*

The CVP and SWP operations are managed in coordination with each other pursuant to the Coordinated Operations Agreement ("COA"). *Id.* at ¶ 7. The COA is a Congressionally authorized agreement between the federal government and the State of California that establishes a framework that allocates responsibilities for achieving water management goals, including how the CVP and SWP meet state and federal water quality and fishery standards. *Id.* It outlines responsibilities for how meeting in-basin uses, including regulatory requirements and available flow for beneficial uses, will be shared between the CVP and the SWP. *Id.* Responsibility for meeting regulatory requirements—such as Decision-1641, which is a joint obligation for the CVP and SWP—is shared based on the formulas contained in the COA. *Id.*

If either the CVP or the SWP cannot meet their COA obligations, the other project must use

NOTICE OF MOT., MOT. TO INTERVENE, &      4      2:26-cv-00671-JLT-EPG
MEM. OF POINTS & AUTH. OF SWC

its resources temporarily to satisfy in-basin use obligations, such as meeting requirements under Decision-1641. *Id.* ¶ 8. When that occurs, the COA provides a mechanism for pay-back of the lost water supply. *Id.* However, based on multiple considerations, including hydrology, pay-back may not occur and debt may not be repaid. *Id.* Given this operational relationship, DWR also obtains incidental take authorization through the same biological opinion and ITS that are the subject of this litigation.

      **C.     Regulation of the CVP and SWP Under the Federal Endangered Species Act**

Section 7 of the ESA requires federal agencies, such as Reclamation, to consult with NMFS and/or U.S. Fish and Wildlife Service ("FWS") to ensure any action they "authorize[], fund[], or carr[y] out … is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.01(a). Federal agencies must do so "in consultation" with FWS and/or NMFS, depending on the species that may be affected. *Id.* The end result of consultation is the issuance of a written biological opinion evaluating the effects of the proposed action on listed species and critical habitat. *Id.* § 1536(b)(3). Where incidental take is reasonably certain to occur as a result of the action, the biological opinion will include an incidental take statement. *Id.* § 1536(b)(4); 50 C.F.R. § 402.14(i).

The coordinated long-term operations of the CVP and SWP have been governed by a series of biological opinions. In 2024, NMFS issued its most recent biological opinion on the long-term operations of the CVP and SWP. Pierre Decl. at ¶ 17. The 2024 BiOp included an incidental take statement specifying the impact of incidental taking on listed fish species and measures necessary or appropriate to minimize such impact. In the 2024 BiOp, NMFS concluded that the long-term operations of the CVP and SWP would not jeopardize listed species or adversely modify critical habitat.

### D.    The Current Dispute

In December 2025, Reclamation updated its operational plan for the CVP to incorporate what is referred to as "Action 5." Plaintiffs filed the Complaint against Federal Defendants on March 2, 2026. Plaintiffs allege three claims arising under the ESA involving Reclamation's operations of the CVP. ECF No. 1 at 32–38. Plaintiffs allege: (1) Reclamation violated ESA section 7(a)(2) and its implementing regulations because, as Plaintiffs allege, incidental take of individual fish at the Delta pumps in 2025 exceeded the levels anticipated in the 2024 BiOp, *id.* ¶ 103; (2) Reclamation and NMFS are in violation of section 7(a)(2) of the ESA for failing to reinitiate consultation after the ITS "take limit" was allegedly exceeded and after Reclamation modified operations pursuant to Action 5, *id.* ¶¶ 108–114; and (3) Reclamation abrogated the incidental take coverage of the 2024 BiOp and ITS, making the agency liable under section 9 of the ESA for take of endangered fish species, *id.* ¶ 116.

Plaintiffs' prayer for relief seeks declaratory relief confirming the ESA violations they allege. *Id.* at 38. Plaintiffs also request that the Court enjoin Reclamation from further unpermitted take of listed species, *id.*, and  to reinitiate consultation in order "to produce a new biological opinion." *Id.* ¶ 9.

## III.    ARGUMENT

### A.    SWC is Entitled to Intervene as a Matter of Right

An applicant is entitled to intervene as a matter of right under FRCP 24(a)(2) if: (1) the motion is timely; (2) the applicant claims a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). In evaluating these factors, the United

States Court of Appeals for the Ninth Circuit takes into account "practical and equitable considerations" and construes FRCP 24(a)(2) "broadly in favor of proposed intervenors." *United States v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002) (citation omitted). The Ninth Circuit has a longstanding liberal policy in favor of granting intervention. *Id.* at 397–98. As demonstrated below, SWC and its member agencies meet each of the requirements for intervention as a matter of right.

### 1.    The Motion to Intervene is Timely

This Motion to Intervene is timely because it is filed in the earliest stage of proceedings, no existing party will be prejudiced, and there has been no delay. In determining whether a motion is timely, the Ninth Circuit considers the following three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted); see also *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303–04 (9th Cir. 1997).

Because the litigation is still in the very early stages, SWC's intervention will not cause delay or otherwise prejudice the existing parties. The Court has not yet engaged substantively with the issues. Federal Defendants have not yet filed a pleading in response to the Complaint. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (intervention timely where the defendant had not filed an answer); *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1179; *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1118 (C.D. Cal. 2015) (same).

### 2.    SWC and Its Members Have a Significant Protectable Interest in the Subject of the Litigation

The interest prong of FRCP 24(a) is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *City of L.A.*, 288 F.3d at 398 (citation omitted). An applicant has a "significant protectable interest"

NOTICE OF MOT., MOT. TO INTERVENE, &            7                2:26-cv-00671-JLT-EPG
MEM. OF POINTS & AUTH. OF SWC

in an action if: "(1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Id.* (internal quotations and citation omitted); *see also Wilderness Soc'y*, 630 F.3d at 1176 (applying the same test in the NEPA context). This test is a "practical, threshold inquiry" for which "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (citation omitted). If the applicant's claimed interest relates to the underlying subject-matter of the litigation, the applicant has satisfied the interest standard for mandatory intervention. *See Alisal Water*, 370 F.3d at 919–20. An applicant generally shows that there is a "relationship" by showing that the resolution of the plaintiff's claim will affect the applicant. *City of L.A. Angeles*, 288 F.3d at 398.

Each of SWC's member agencies has a long-term water supply contract with DWR that entitles it to participate in the SWP. Pierre Decl. ¶ 13. SWC's member agencies depend on reliable SWP water supplies. *Id.* ¶ 21. As the providers of water to millions of Californians and 750,000 acres of farmland, SWC's members have a protectable interest in the regulation of Delta water supplies from the SWP, which is a significant source of water for all of SWC's members. Pierre Decl. ¶¶ 2, 20.

Contract rights, such as those held by SWC's member agencies are "traditionally protectable interests." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). In *Natural Resources Defense Council v. Norton*, No. 05-16581, 2006 WL 1050147, at *2 (9th Cir. 2006), the Ninth Circuit concluded that SWC should be allowed to intervene as a matter of right in an action brought against FWS and NMFS regarding the adequacy of prior biological opinions pertaining to the coordinated operations of the CVP and SWP. On multiple occasions, California district courts have relied upon SWC member agencies' contractual interests in SWP water as supporting intervention as a matter of right in analogous cases involving litigation over prior

NOTICE OF MOT., MOT. TO INTERVENE, &          8          2:26-cv-00671-JLT-EPG
MEM. OF POINTS & AUTH. OF SWC

biological opinions regulating the SWP. *Golden Gate Salmon Ass'n v. Ross*, No. 1:17-cv-01172-LJO-EPG, ECF No. 35 (E.D. Cal. Oct. 17, 2017), *Bay.org v. Zinke*, No. 1:17-cv-01176-LJO-EPG, ECF No. 40 (N.D. Cal. Oct. 17, 2017), *Pac. Coast Fed. of Fishermen's Ass'n v. Ross*, No. 1:20-cv-00431-JLT-EPG, ECF No. 37 (E.D. Cal. Jan. 27, 2020), *Cal. Nat. Res. Agency v. Raimondo*, No. 1:20-cv-00426-JLT-EPG, ECF No. 65 (E.D. Cal. Apr. 23 2020).

These cases are consistent with the decision of the Supreme Court of the United States in *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (irrigation district's interest in protecting its water supply is a legally cognizable interest under the ESA). In line with the Supreme Court's holding, district courts have consistently recognized that water contractors have a significant protectable interest in actions under the ESA. *Cal. Trout*, 115 F. Supp. 3d at 1118–19 (interests of irrigation districts in an ESA challenge are sufficient to meet the "interest" test); *Friant Water Auth. v. Jewell*, No. 1:14–CV–000765–LJO–BAM, 2014 WL 2197942, at *1–3 (E.D. Cal. May 27, 2014) (granting intervention to the CVP water contractors in an action challenging Reclamation's water release from Millerton Lake/Friant Dam, from which they were legally entitled to receive water as part of the CVP ); *Kachess Cmty. Ass'n v. Bureau of Reclamation*, No. 1:19-CV-3155-RMP, 2019 WL 10744937, at *1 (E.D. Wash. Dec. 11, 2019) (granting intervention to irrigation district in lawsuit challenging the federal defendants' ESA compliance); *All. for the Wild Rockies, Inc. v. U.S. Army Corps of Eng'rs*, No. 3:16-cv-01407-HZ, ECF No. 28 (D. Or. Nov. 8, 2016) (granting intervention to irrigation district in lawsuit challenging the federal defendants' ESA compliance).

SWC member agencies' contractual interests in SWP water relate to the subject matter of the litigation. Plaintiffs allege exceedances of the ITS thresholds and seek reinitiation of ESA consultation on the 2024 BiOp. The 2024 BiOp and accompanying ITS were issued in connection with the coordinated operations of both the CVP and SWP. Pierre Decl. ¶ 17. Both Reclamation and DWR must comply with the ITS, and its protective coverage applies to both DWR's operations

NOTICE OF MOT., MOT. TO INTERVENE, &         9                    2:26-cv-00671-JLT-EPG
MEM. OF POINTS & AUTH. OF SWC

of the SWP and Reclamation's operation of the CVP. *Id.* The ITS provides coverage for the take of listed species (i.e., an exemption from the ESA's prohibition on take), without which the SWP could not lawfully operate. Further, reinitiation of consultation with respect to the CVP would necessarily require reinitiation of consultation on the SWP and could result in changes in coordinated operations, creating water insecurity and threatening the reliability of SWP water deliveries to SWC's members under their contracts. *Id.* ¶ 20.

SWC's member agencies also have protectable interests in the ESA consultation related to the operations of the CVP and SWP which are recognized and protected by statute. Pursuant to the Water Infrastructure Improvements for the Nation Act, Pub. L. No. 114-322, tit. III, § 4004 (2016), upon request, any public agency that contracts for CVP or SWP water shall be kept informed of and allowed to provide comments regarding ESA consultations on the coordinated operations of the CVP and SWP. Pub. L. No. 114-322, tit. III, § 4004 (2016).

Accordingly, SWC meets the "interest" test and has significant protectable interests in this case.

### 3. SWC's Rights May be Impaired by the Outcome of this Case

The third prong of the inquiry is whether "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." FRCP 24(a)(2). Generally, after determining an applicant has a protectable interest, courts have "little difficulty concluding" that the disposition of the case may affect that interest. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). Applicants need only demonstrate that their interests "would be substantially affected in a practical sense." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting FRCP 24 advisory committee's note).

Some of Plaintiffs claims in this case relate to whether Reclamation must operate pursuant to the 2024 BiOp or to Action 5. ECF No. 1 ¶¶ 89–96. How Reclamation operates the CVP impacts

SWP water supplies because if Reclamation modifies its operations in a manner that impacts its ability to meet regulatory requirements, the SWP must use its resources temporarily to satisfy in-basin use obligations, such as meeting requirements under Decision-1641, pursuant to the COA. Pierre Decl. ¶ 19.

Plaintiffs also seek an order requiring Reclamation to reinitiate consultation under section 7 of the ESA on the long-term coordinated operations of the CVP and SWP to produce a new, updated biological opinion and ITS. Because the 2024 BiOp and ITS cover both the CVP and SWP, reinitiation of consultation could lead to operational modifications that would impact water supply from the SWP. *Id.* ¶¶ 20–21. Even if reinitiation of consultation only led to operational changes of the CVP, such changes could impact SWP water supplies due to the COA. *Id.* ¶¶ 7–8. Current and future SWP water supplies will be affected by conditions imposed on such operations through future ESA consultations. *Id.* ¶¶ 20–21. Since SWC's member agencies depend on the SWP for a significant portion of their water supplies, this case has the potential to impact the ability of SWC's members to receive reliable water deliveries and has the potential to impact the quantity of water available to SWC's member agencies. *Id.* ¶ 21. Furthermore, SWC's member agencies will continue to carry the entirety of the financial burden of the SWP regardless of any reduction in water deliveries. *Id.* In addition, reinitiation of consultation could also lead to modifications of the non-operational mitigation incorporated into the 2024 BiOp, such as a habitat restoration. *Id.* ¶ 22. The SWP shares responsibility and costs for such mitigation with the CVP, and thus would be impacted if reinitiation of consultation resulted in modifications to such mitigation. *Id.* Thus, this action fundamentally affects SWC's member agencies, and, ultimately, those who reside and work within their service areas. *Id.* ¶ 21.

### 4.    SWC's Interests are not Adequately Represented

The interests of the SWC and its members are not adequately represented by Plaintiffs,

Federal Defendants or the other proposed Defendant-Intervenors.

The Supreme Court has stated that the burden of demonstrating the inadequacy of representation should be treated as "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.") (citing 3B J. Moore, Federal Practice ¶ 24.09-1[4] (1969)); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. The Court must consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*City of L.A.*, 288 F.3d at 398 (citation omitted).

Plaintiffs do not adequately represent SWC because several of their arguments, including allegations that the ITS take thresholds are being exceeded, are contrary to SWC's interests. Federal Defendants are concerned with ESA compliance and managing resources for the general public, not with the particularized interests of water users. Although there is a presumption that a governmental entity represents the interests of its citizens, this presumption may be overcome where the applicant's interests are narrower than the interest of the public. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). Merely sharing the same objective with a government defendant is not enough to demonstrate that the applicant's interest is adequately represented. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

Furthermore, neither Federal Defendants nor the other proposed Defendant-Intervenors adequately represent SWC because they have no legal interest in, or responsibility for, the SWP. The Ninth Circuit has previously found that SWC's interests are not adequately represented by federal agencies in an ESA litigation challenging biological opinions pertaining to the SWP. In

NOTICE OF MOT., MOT. TO INTERVENE, &            12                    2:26-cv-00671-JLT-EPG
MEM. OF POINTS & AUTH. OF SWC

*Norton*, the Ninth Circuit considered whether SWC was entitled to mandatory intervention in an action challenging the adequacy of a biological opinion addressing the previously proposed coordinated operations of the CVP and SWP. 2006 WL 1050147, at *1. The Ninth Circuit concluded that SWC's interests were not adequately represented, explaining:

> [G]iven the Contractors' members' exclusive interest in a majority of the water contracts issued from the State Water Project and Contractors' unique interest in defending the South Delta Improvement Program, there is no assurance that all of the Contractors' arguments will be addressed if they are not included as parties to this action. Moreover, as a result of its exclusive interest in the State Water Project and the South Delta Improvement Program, there are serious doubts that the existing parties would protect those interests to the same extent, particularly if the parties were to enter into settlement discussions.

*Id.* The Ninth Circuit's reasoning in *Norton* is highly relevant to this case. Just as in *Norton*, SWC's interests are not adequately represented by the Federal Defendants or the other proposed Defendant-Intervenors. As recognized in *Norton*, SWC does not share the same objective with the Federal Defendants, nor any of the other proposed Defendant-Intervenors who are CVP contractors. SWC represents 27 of the 29 public agencies that hold contracts with DWR for SWP water supplies, and the SWC's member agencies account for nearly all of the entitlements to SWP water. Pierre Decl. ¶ 3. SWC and its member agencies are primarily concerned with operations and regulatory requirements related to the SWP, and how operations and regulatory requirements impact the SWC's contractual interest in receiving SWP water.

Conversely, Federal Defendants and the other proposed Defendant-Intervenors are concerned with operations and regulatory requirements related to the CVP. Protecting the particular interests of adequate, reliable, high-quality water supplies from the SWP and the rights of SWC's members to receive SWP water conveyed across and diverted from the Delta is not the primary interest of the Federal Defendants or the other proposed Defendant-Intervenors. Given these differences, there is no guarantee that Federal Defendants or the other proposed Defendant-

Intervenors "will undoubtedly make all [of the Water Contractors] arguments." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (citation omitted).

In sum, SWC's Motion to Intervene should be granted because it satisfies all four prongs of FRCP 24(a).

**B.    In the Alternative, SWC Should be Granted Permissive Intervention**

In the alternative, SWC and its members meet the test for permissive intervention under FRCP 24(b). SWC and its members have: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (citation omitted). Courts have broad discretion to grant permissive intervention. *Smith v. Pangilinan*, 651 F.2d 1320, 1325–26 (9th Cir. 1981).

First, where, as here, an applicant for intervention in a federal-question case brings no new claims, the jurisdictional concern drops away. *Freedom from Religion Found.*, 644 F.3d at 844. Second, as explained above, this Motion is timely, will not delay the proceedings, and will not result in any prejudice to the existing parties. FRCP 24(b)(3). Third, SWC's positions in this case will raise common questions with Plaintiffs' claims because SWC seeks to defend against Plaintiffs' allegations relating to incidental take exceedances and request for reinitiation of consultation.

Therefore, should the Court find that the SWC is not entitled to intervention as of right, the Court should grant permissive intervention to the SWC.

//

//

//

NOTICE OF MOT., MOT. TO INTERVENE, &            14                    2:26-cv-00671-JLT-EPG
MEM. OF POINTS & AUTH. OF SWC

## IV.    CONCLUSION

For the foregoing reasons, SWC respectfully requests that this Court grant it intervention as a matter of right or in the alternative, permissive intervention.

Dated: April 16, 2026                        Respectfully submitted,

VAN NESS FELDMAN LLP

s/ Allison McAdam
Allison McAdam, SBN 226836

s/ Jenna R. Mandell-Rice
Jenna R. Mandell-Rice, Pro Hac Vice Pending

*Attorneys for Proposed-Intervenor*
*The State Water Contractors*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court via the CM/ECF system, which will automatically send notice of such filing to all counsel of record who are registered CM/ECF participants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 16, 2026                         */s/ Allison McAdam*
                                              Allison McAdam, SBN 226836

CERTIFICATE OF SERV.                    1                    2:26-cv-00671-JLT-EPG