John Buse (CA Bar No. 163156)
Harrison Beck (CA Bar No. 341717)
Jared Margolis (OR Bar No. 146145, Admitted Pro Hac Vice)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375, Oakland, CA 94612
Tel: (510) 844-7100
jbuse@biologicaldiversity.org
hbeck@biologicaldiversity.org
jmargolis@biologicaldiversity.org

*Attorneys for Plaintiffs Center for Biological Diversity
and Friends of the River*

Eric J. Buescher (CA Bar No. 271323)
Christina D. Ralston (CA Bar No. 362848)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, CA 94612
Tel: (510) 735-9700
eric@baykeeper.org
christie@baykeeper.org

*Attorneys for Plaintiff San Francisco Baykeeper*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF RECLAMATION, et al., <br><br> Defendants. | Case No.:  2:26-CV-00671–JLT–EPG <br><br> **PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Judge: Hon. Jennifer L. Thurston <br><br> Action Filed: March 2, 2026 |

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION
FOR TEMPORARY RESTRAINING ORDER

## I.   **<u>INTRODUCTION</u>**

For the reasons articulated in Plaintiffs' oppositions to Proposed Intervenor Defendants' motions to intervene, intervention is inappropriate under Federal Rules of Civil Procedure 24(a) and 24(b). *See* ECF Nos. 22, 31, 39. If the Court accepts the oppositions filed by Proposed Intervenors State Water Contractors (ECF No. 51) and the Friant Water Authority and Arvin-Edison Water Storage District (ECF No. 53-1), either as opposition briefs or amicus briefs, Plaintiffs provide the following reply in support of their motion for a temporary restraining order.

State Water Contractors, joined by the Friant Water Authority and Arvin-Edison Water Storage District, raise a host of arguments in opposition to Plaintiffs' motion for a temporary restraining order that are duplicative of the U.S. Bureau of Reclamation's ("Reclamation") opposition. For example, State Water Contractors assert that Reclamation was correct to categorize Water Year 2026 as a Bin 2A year, that Plaintiffs did not demonstrate irreparable harm sufficient to warrant injunctive relief, and that the requested relief is a mandatory injunction. These subjects are addressed in Plaintiffs' reply to Reclamation and the other Federal Defendants. That duplication, and its associated burdens, support the arguments Plaintiffs raised in opposition to the motions to intervene. *See* ECF Nos. 22, 31, 39.

In addition to the arguments also made by Reclamation, State Water Contractors assert that only a violation of the incidental take statement included in the National Marine Fisheries Service's ("NMFS") 2024 biological opinion, not of the requirements of the biological opinion itself, is actionable under the Endangered Species Act, that no harm will occur in the next fourteen days, that Plaintiffs' assertion of irreparable harm is inconsistent with the Court's rulings on Interim Operations Plans during litigation over the 2019 biological opinions, that Plaintiffs' requested relief is insufficient to avoid harms, that Reclamation cannot reduce allocations to Central Valley Project ("CVP") contractors during Bin 1 years, and that reduced releases by Reclamation could impact the State Water Project due to the projects' mutual obligation to meet water quality requirements. None of these arguments support denial of Plaintiffs' motion.

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

## II.    ARGUMENT

### A.    RECLAMATION IS REQUIRED TO COMPLY WITH THE MANDATORY TERMS OF THE BIOLOGICAL OPINION.

State Water Contractors argue, without citation to case law, that Reclamation is not required to comply with mandatory conditions in the biological opinion, but instead only the explicit terms of the incidental take statement included therein. ECF No. 51 at 9:1-11. This is not the law. The Endangered Species Act's ("ESA") citizen-suit provision, 16 U.S.C. § 1540(g), broadly authorizes any person to commence a civil suit to enjoin any other person or governmental entity alleged to be in violation of any provision of the ESA or its implementing regulations, and not just violations of incidental take limits contained in the relevant incidental take statement. As alleged in Plaintiffs' Amended Complaint and the instant motion, Section 7 of the ESA imposes both a procedural and a substantive mandate. *Cottonwood Envtl. Law Ctr. v. U.S. Forest Service*, 789 F.3d 1075, 1087-88 (9th Cir. 2015). Pursuant to Section 7(a)(2), federal agencies have an ongoing duty to avoid jeopardizing protected species that continues regardless of the status of consultation, so long as the agency retains discretionary control over the relevant action. *Id.*; *see also Defs. of Wildlife v. Martin*, 454 F. Supp. 2d 1085, 1094 (E.D. Wash. Sept. 22, 2006) ("Section 7(a)(2) of the ESA imposes a substantive duty in addition to its procedural consultation requirement."). Where, as here, an agency fails to conform to the strictures of a biological opinion in such a way as to risk jeopardizing the continued existence of a protected species, it violates Section 7(a)(2) of the ESA. *See, e.g.*, *Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1087-88. More, an agency's violation of Section 7(a)(2)'s substantive no-jeopardy mandate triggers its obligation to reinitiate consultation. 50 C.F.R. § 402.16(a)(1)-(4). And once reinitiated consultation is triggered, injunctive relief mandating that the agency strictly comply with the existing biological opinion is appropriate during the pendency of that reinitiated consultation in order to avoid further harm to protected species. 16 U.S.C. § 1536(d); *Pac. Coast Fedn. of Fishermen's Ass'ns v. United States Bureau of Reclamation*, 2006 WL 798920, at *1-2 (N.D. Cal. Mar. 27, 2006).

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Additionally, even assuming for the sake of argument that the above did not apply, the incidental take statement in NMFS's biological opinion incorporates the Shasta Framework. *See* ECF No. 22-1 at 18, 21-23 (excerpt of NMFS biological opinion at 886, 889-891 [incidental take statement]). This Court should therefore ignore State Water Contractors' last ditch, unsupported argument that only violations of Section 9 are actionable under the ESA.

### B.    STATE WATER CONTRACTORS' ARGUMENTS ABOUT IRREPARABLE HARM ARE INCORRECT AND IRRELEVANT.

State Water Contractors also assert that there is no evidence of irreparable harm because there are no population level impacts to winter-run Chinook Salmon based on Reclamation's conduct. Plaintiffs addressed most of this argument in their reply to Reclamation and the other Federal Defendants. In short, this issue has already been resolved – movants under the ESA need not show population-level harm to demonstrate irreparable harm for the purposes of injunctive relief. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (2018) ("Showing an extinction-level threat to listed species is not required before an injunction can issue under the ESA."). And even if that were not the case, Plaintiffs here have adequately demonstrated a likelihood of population-level harm for the reasons articulated in their motion and reply to Reclamation and the other Federal Defendants.

State Water Contractors' argument differs from Reclamation's, however, insofar as they assert that this Court's orders regarding various Interim Operations Plans in connection with prior litigation challenging the 2019 biological opinions issued by NMFS and the U.S. Fish and Wildlife Service ("FWS") dictate denial of this motion and demonstrate that there is no irreparable harm. This argument ignores the substantial difference between that case and this one. First, the litigation over the Interim Operations Plans took place in the absence of valid biological opinions because the court had already vacated the operative biological opinions for having violated the ESA. As a result, the Interim Operations Plans were designed to take the place of biological opinions for a short-term basis. Here, Plaintiffs are asking for the Court to enforce a biological opinion. Thus, while State Water Contractors assert that compliance with a temperature target of 53.5 degrees Fahrenheit was rejected

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

by the Court when considering the adequacy of proposed Interim Operations Plans, that threshold is already established as the operative target in NMFS's 2024 biological opinion. *See* ECF 47-2 at 70 (NMFS biological opinion at 290) ("critical temperature threshold being used as a management target for SR winter-run Chinook salmon egg incubation is 53.5°F daily average temperature"). That target, and the Shasta Framework designed to ensure it is met, were one of the major improvements contained in NMFS's 2024 biological opinion as compared to the 2019 version (that had been vacated for having violated the ESA). *See* ECF No. 47-3 at 21-24 (Rosenfield Decl. ¶¶ 54-61). The State Water Contractors' recitation of the Court's prior question – "how much mortality is too much and over what time scale," ECF No. 51 at 10:8, is therefore irrelevant, as NMFS has already made those determinations. Plaintiffs do not ask the Court to supplant NMFS's conclusions, conditions, restrictions, or requirements for the operation of the CVP (or the Shasta Dam and reservoir more specifically). Plaintiffs merely ask the Court to enforce the existing ones.

Finally, State Water Contractors assert that there is no irreparable harm that would occur within fourteen days. This too misunderstands the relief sought and the planned operations of the CVP. There is a concrete and limited amount of water in Shasta Reservoir and Reclamation is discharging 12,500 cubic feet per second ("cfs") as the parties dispute this motion. Once that water is discharged, it cannot be returned to the reservoir, making immediate relief necessary and appropriate in order to ensure that this Court can order Reclamation to operate the dam and reservoir in compliance with the Shasta Framework (and therefore the ESA) before it runs out of its coldwater resource. *See* generally ECF No. 47-3 (Rosenfield Decl.).

## C. PLAINTIFFS HAVE SOUGHT INJUNCTIVE RELIEF THAT WILL MEANINGFULLY REDUCE IRREPARABLE HARM, THIS COURT CAN ISSUE SUCH RELIEF, AND RECLAMATION CAN CONFORM TO SUCH AN ORDER.

State Water Contractors assert that Reclamation's creation of a plan to comply with the Shasta Framework cannot provide Plaintiffs relief because Plaintiffs did not ask the Court to require Reclamation to follow that plan. ECF No. 51 at 14:10-11. This too is incorrect. Plaintiffs asked the

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Court to order Reclamation to comply with the biological opinion and to comply with an updated plan to do so. ECF No. 47-1 at 29:13-14.

Contrary to State Water Contractors' assertion, Plaintiffs' evidence demonstrating irreparable harm does not rely on the idea that conditions could be better if Reclamation operated differently. Instead, Plaintiffs demonstrated both that Reclamation's planned operations violate the Shasta Framework and therefore the ESA and that such operations are likely to cause substantial and avoidable mortality to a species already on the brink of extinction due to elevated water temperatures in the Sacramento River, and that such mortality is likely to be more severe than what Reclamation expects. ECF No. 47-3 at 7-8, 25-36 (Rosenfield Decl. ¶¶ 17, 62-80, 87). That harm is irreparable—eggs do not unboil, fish do not undie. That the harm is also avoidable is what makes temporary relief appropriate.

**D.    OPERATIONAL DIFFICULTY DOES NOT ALLOW RECLAMATION TO VIOLATE THE ENDANGERED SPECIES ACT; RECLAMATION AND THE STATE WATER PROJECT MUST MEET ALL THEIR LEGAL OBLIGATIONS.**

State Water Contractors' final argument, similar to claims made by Reclamation, is that if Reclamation is required to store additional water in Shasta Reservoir, the State Water Project could be required to release additional water so that the projects' coordinated operations can satisfy shared water quality requirements. The evidence for this claim is conclusory at best. Mr. Chilmakuri does not provide any quantitative analysis of the impact of reduced releases or an updated plan to target 2.4 million acre-feet of end-of-September storage. Instead, he suggests that a temporary limitation on releases from Shasta "could constrain" Reclamation's ability to meet obligations under Water Rights Order D-1641. There is no evidence from State Water contractors or from Reclamation that releasing no more than 11,500 cfs until an updated operations plan that meets the requirements of the biological opinion and Shasta Framework is approved will risk meeting water quality standards downstream. And even if some evidence existed, the remedy would be to limit water exports for delivery south of the Delta or consumptive use of water north of the Delta; Reclamation and the State Water Project cannot shirk their ESA obligations in order to make discretionary deliveries to water contractors.

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

## III.    CONCLUSION

Plaintiffs' Motion for Temporary Restraining Order should be granted.

Respectfully submitted,

Dated:_____July 1, 2026_____    **SAN FRANCISCO BAYKEEPER**

/s/ _____Eric J. Buescher_____
ERIC J. BUESCHER
CHRISTINA D. RALSTON

*Attorneys for Plaintiff San Francisco Baykeeper*

**CENTER FOR BIOLOGICAL DIVERSITY**

/s/ _____Harrison Beck_____
HARRISON BECK
JOHN BUSE
JARED MARGOLIS

*Attorneys for Plaintiffs Center for Biological Diversity and Friends of the River*

PLAINTIFFS' REPLY REGARDING PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER