**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, et al., | Case No. 2:26-cv-0671 JLT EPG |
| Plaintiffs, | ORDER GRANTING MOTIONS TO INTERVENE IN PART; ALLOWING ALL APPLICANTS TO PERMISSIVELY INTERVENE WITH CONDITIONS |
| v. | |
| U.S. BUREAU OF RECLAMATION, et al., | (Docs. 6, 11, 25, 32) |
| Defendants. | |

## I.      INTRODUCTION

Plaintiffs, a pair of environmental organizations interested in the health of California's San Francisco Bay, the Sacramento-San Joaquin Delta, and the species that reside in or transit through the Bay-Delta watershed, bring this lawsuit against the U.S. Bureau of Reclamation (Reclamation) and the National Marine Fisheries Service (NMFS), as well as various official representatives of those agencies. (Doc. 46.) Reclamation operates the federal Central Valley Project (CVP), "one of the largest water infrastructure and conveyance systems in the United States." (*Id*., ¶ 1.) Together, the CVP and the related, state-run State Water Project (SWP), "provide water to more than 25 million agricultural and domestic consumers in central and southern California." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 984 (9th Cir. 2014). "Although the Projects provide substantial benefits to people and to state agriculture,

1

they arguably harm species native to the Delta by modifying those species' natural habitats." *Id*. at 986. As a result, the Projects, which are operated in coordination with one another, have long been subject to constraints imposed by a series of "Biological Opinions" (BiOps) issued under the Endangered Species Act, in which relevant federal wildlife agencies[1] determine whether the coordinated operation of the Projects is likely to adversely impact endangered or listed species, or negatively modify their critical habitats. *Id*. at 988 (citing 16 U.S.C. § 1536(a)(2). .

At issue in this case is NMFS's 2024 BiOp[2] that addresses the impact of Project operations on various anadromous species. The 2024 BiOp incorporated various operational requirements intended to limit species-related impacts of Reclamation's operation of the CVP. Among other things, it adopts a management plan for Shasta Dam and Reservoir referred to as the "Shasta Framework" that assigns water year categories generally according to the amount of water in Shasta Reservoir at the end of each April. (Doc. 46, ¶ 89; 2024 BiOp at 283–87.)

Plaintiffs' first Claim for Relief alleges Reclamation's operation of the CVP is jeopardizing listed species in violation of ESA section 7(a)(2), 16 U.S.C. § 1536(a)(2) because, among other things: (1) incidental "take" of fish at CVP and SWP pumping facilities in 2025 exceeded the levels anticipated in the applicable 2024 biological opinion (BiOp) governing operation of the CVP and SWP (Doc. 46, ¶¶ 120–22); and (2) Reclamation is operating the Shasta Dam and reservoir without conforming to the Shasta Framework. (*Id*. ¶¶ 123–25.) Plaintiffs' second claim for relief alleges, among other things, that Reclamation is violating the Administrative Procedure Act, 5 U.S.C. § 706(1) by failing to reinitiate consultation "because the amount or extent of taking specified in the incidental take statement [of the 2024 BiOp has been] exceeded." (Doc. 46, ¶ 131 (quoting 50 C.F.R. § 402.16).) The third claim for relief alleges that Reclamation is liable under Section 9 of the ESA, 16 U.S.C. § 1538, because it has violated

---

[1] "Whether an agency consults with NMFS or [the U.S. Fish and Wildlife Service (FWS)" depends on the species for which it is seeking consultation. NMFS consults on marine and anadromous species." *Locke*, 776 F.3d at 987 n. 7.

[2] The complete text of the 2024 BiOp is available at: https://s3.amazonaws.com/media.fisheries.noaa.gov/2024-12/lto-biological-opinion-appendices-2024.pdf (last visited July 1, 2026). The court may take judicial notice of the BiOp and other decision documents like it "for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *United States v. S. Cal. Edison Co*., 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004).

2

various incidental take limits for impacted listed species and otherwise abrogated the incidental take coverage of the 2024 BiOp and its ITS. (Doc. 46, ¶¶ 139–143.)

Before the Court are four  motions to intervene filed, respectively, by the San Luis & Delta-Mendota Water Authority ("San Luis") (Doc. 6), Westlands Water District and related entities ("Westlands") (Doc. 11), the State Water Contractors (Doc. 25), and Friant Water Authority and Arvin-Edison Water Storage District ("Friant ") (Doc. 32). All Applicants move for intervention as of right pursuant to Federal Rule of Civil Procedure 24(a) and in the alternative for permissive intervention pursuant to Rule 24(b). Plaintiffs oppose all forms of intervention by all Applicants. (Docs 22, 31, 39.)

## II.    LEGAL STANDARDS

An applicant is entitled to intervene as a matter of right if: (1) the motion is timely; (2) the applicant claims a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant is situated such that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*); *see also Allied Concrete and Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018). Permissive intervention "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action," but "[w]here the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843–44 (9th Cir. 2011) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). "The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy." *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990); *see also Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). When exercising this discretion, the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Donnelly*, 159 F.3d at 412; *Spangler v. Pasadena City Bd. Of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (in evaluating propriety of

3

permissive intervention, district courts consider factors including, but not limited to, "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case.").

A Court may impose reasonable conditions upon intervention. *See* Advisory Committee Notes on Rule 24, 28 U.S.C. App., p. 567 ("intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings"), *cited with approval in Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382–83 (1987) (Brennan, J., concurring in part) (while acknowledging that limitations can be placed on both intervenors as of right and permissive intervenors, "a district court has less discretion to limit the participation of an intervenor as of right than that of a permissive intervenor); *see also Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.*, No. CV 16-158-M-DLC, 2017 WL 11612499, at *2 (D. Mont. May 9, 2017) (imposing briefing consolidation and meet and confer requirements on parties intervening as of right).

## III.    DISCUSSION

In the context of this highly complex case and considering the time-sensitive nature of the pending motions for temporary and preliminary injunctive relief, as explained in greater detail below, the Court would impose reasonable conditions upon briefing submitted by all Applicants in this action regardless of the method of intervention. Judges of this Court have "take[n] the path of least resistance" in relation to intervention in related cases. *Cf Cal. Nat. Res. Agency v. Ross*, No. 1:20-CV-00426 DAD EPG, 2020 WL 13580844, at *2 (E.D. Cal. Apr. 23, 2020) (where permissive intervention was not contested, declining to address intervention as of right while also prohibiting duplicative briefing). The Court concludes it is appropriate to approach this case in a similar manner and will thus address only permissive intervention and appropriate conditions.

Crucially, Plaintiffs *concede* that the Applicants' meet the threshold requirements for permissive intervention. (Doc. 22 at 20 (acknowledging that San Luis' and Westlands' requests for permissive intervention are consistent with Rule 24(b)); Doc. 39 at 18 (same as to Friant); Doc. 31 at 21 (implying the same as to State Water Contractors by arguing only the "*Spangler* factors"). Indeed, this is not surprising. First, because Applicants do not intend to bring

independent claims, the first element (independent ground for jurisdiction) "drops away." *Freedom*, 644 F.3d at 843–44. Second, Applicants' motions are all indisputably timely. This lawsuit was initiated on March 3, 2026, and the latest intervention motion was filed less than two months after, well before any substantive motions or responsive pleadings were on file. *See e.g., Sawyer v. Bill Me Later, Inc.*, No. CV 10-04461 SJO (JCGx), 2011 WL 13217238, at *3 (C.D. Cal. Aug. 8, 2011) (intervention timely even though filed one year after commencement of suit because the defendant had yet to answer, depositions had been noticed or taken, document discovery had only recently begun, and the discovery had been narrowly focused on two limited issues); *Delano Farms Co. v. Cal. Table Grape Comm'n*, No. 1:07–CV–1610-OWW-SMS, 2010 WL 2942754, at *1 (E.D. Cal. July 23, 2010) (motion to intervene timely even though the case had progressed for about three years because "no substantive rulings ha[d] been made"). Finally, Applicants' proposed answers all offer responses and defenses that demonstrate their participation will address the same questions of law and fact already before the Court. (*See* Docs. 9, 11-3, 25-2, 32-2.) Moreover, these and similar parties have been permitted to intervene in numerous previous disputes over biological opinions covering the Water Projects. *See, e.g., Natural Res. Defense Council v. Bernhardt*, 1:05-CV-1207 DAD EPG (Doc. 213); *Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 1:06-CV-00245 OWW GSA (Doc. 45); *Golden Gate Salmon Ass'n v. Ross*, 1:17-cv-01172 LJO EPG (Doc. 34); *Ross*, 2020 WL 13580844; *Hoopa Valley Tribe v. United States Bureau of Reclamation*, 648 F. Supp. 3d 1196 (E.D. Cal. 2022). The threshold requirements for permissive intervention are satisfied as to all Applicants.

Once the threshold requirements are met, the Court may consider a wide range of factors in making its discretionary decision on the issue of permissive intervention, including the "nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case." *Spangler*, 552 F.2d at 1329. In addition, the Court may consider "whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking invention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal

questions presented." *Id.* at 1329.

Plaintiffs do argue that the "*Spangler* factors" counsel against permissive intervention. Specifically, Plaintiffs contend that the "nature and extent of the intervenors' interest is merely a subset of the federal defendants' interests, and within that subset it is coextensive; the legal positions they seek to advance are no different from those likely to be advanced by federal defendants; and the positions that Movants do claim as different, such as economic harms to water users, are not relevant to this case." (Doc. 22 at 20; Doc. 31 at 21; Doc 39 at 18.)[3]

Ultimately, for the reasons set forth below, the Court concludes that Applicants have demonstrated their interests diverge from those of Federal Defendants sufficiently to warrant permissive intervention and that consequently Applicants are likely to have information that will contribute to the full development of the record. However, to avoid undue delay and inefficient use of judicial and party resources, intervention must be conditioned more strictly than has previously been required in related cases.

The divergence of interests is most obvious in relation to the State Water Contractors, the members of which are dependent on the SWP for water supply. (*See* Declaration of Jennifer Pierre, Doc. 25-1, ¶ 2.) The CVP and SWP are managed in a coordinated manner pursuant to the Coordinated Operations Agreement (COA), a Congressionally authorized agreement between California and the federal government. (*Id.*, ¶ 7.) If either the CVP or SWP cannot meet its obligations under the COA, "the other project must use its resources temporarily to satisfy in-basin use obligations" such as releases required to meet water quality obligations imposed by state law. (*Id.*, ¶ 8.) Though there is a mechanism for "pay-back of the lost water supply," pay-back is not always possible due to "multiple considerations, including hydrology." (*Id.*) Among other things, Federal Defendants' declarant indicates that Plaintiffs requested injunction would

---

[3] Relatedly, Plaintiffs take the position that the relief they are requesting "would bring the CVP into compliance with existing Endangered Species Act requirements" and that "Reclamation does not need to balance the interests of multiple contractual obligations against each other, concern itself with other laws, or consider the CVP's multiple purposes in order to adhere to the 2024 NMFS biological opinion." (Doc. 22 at 20.) But as San Luis and Westlands point out (Doc. 23 at 3), Plaintiffs' position on *intervention* assumes Plaintiffs will prevail on the *merits* of their claims. Those claims appear likely to require interpretation of disputed language in the 2024 BiOp. The question here is whether Applicants should be permitted to contribute arguments to that dispute.

have consequences for storage at SWP reservoirs due to the need for increased released to meet Delta water quality requirements. (Doc. 50-10.) Moreover, Plaintiffs seek an order requiring Reclamation and NMFS to reinitiate consultation, a result that the State Water Contractors contend will "create water insecurity and threaten the reliability of SWP water deliveries" to the State Water Contractors. (Doc. 25-1, ¶ 20.)

Friant Water Authority and Arvin Edison represent the unique interests of CVP water users that depend on releases from reservoirs on the east side of the San Joaquin Valley, including Millerton Lake, which are impacted by Reclamation's operational decisions and obligations to senior contractors. (Declaration of Ian Buck-MacLeod, Doc. 33-1, ¶¶ 5–7.) Among other things, Friant is party to the 2006 San Joaquin River Restoration Settlement "one of the purposes of which is to restore and maintain fish populations, including reintroduction of spring-run Chinook salmon, in the main stem of the San Joaquin River between Friant Dam and the San Joaquin River's confluence with the Merced River." (*Id*., ¶ 9.) Friant has invested resources into the success of that settlement and is concerned that the relief requested in this case may have negative impacts on the settlement's progress. (Declaration Of Jagjeevan Muhar, Doc. 33, ¶ 6.) In addition, Friant actively advocated for many of the measures included in the 2024 BiOp, which could be impacted if Plaintiffs' request for reinitiation of consultation is granted. (Doc 32 at 17; Doc. 33-1, ¶ 10.)

Finally, San Luis and Westlands are representative of "South-of-Delta" CVP water service contractors, who primarily receive CVP water that is conveyed through the Delta by way of pumping facilities dear the City of Tracy. (*E.g*., Declaration of Allison Febbo, Doc. 11-2, ¶¶ 7–8; Doc. 7, ¶¶ 8–9.)[4] Historically, this Court has generally found this group of contractors is not adequately represented by Federal Defendants because the government has "unique trust obligations to Plaintiff that arguably require Federal Defendants to manage the CVP in certain ways to benefit [others], possibly at the expense of other water contractors, including Westlands."

---

[4] Though San Luis represents multiple South-of-Delta water agencies and itself operates certain CVP facilities in the region, (Doc. 7, ¶¶ 7–8), it is not immediately apparent how its interests diverge in any material way from Westlands,' which is one if its member agencies. (*Id*., ¶ 14.) Thus, the Court evaluates their applications together.

*Hoopa Valley Tribe*, 648 F. Supp. 3d at 1204. Notably, Executive Order 14181, issued January 24, 2025, directs Reclamation to take immediate actions to "maximize water deliveries." This directive at least arguably aligns Reclamation more squarely with the CVP water contractors. (*See* Doc. 46, ¶¶ 108–116 (alleging that E.O. 14181 motivated Reclamation to adopt a new operational plan that departs from the requirements of the 2024 BiOp to export additional water).) Nonetheless, the Court agrees with Applicants that they may be able to contribute information about the tradeoffs and consequences of any requested relief, and that such information may at least be relevant to the tailoring of injunctive relief. *See Pac. Coast Fed'n of Fishermen's Associations v. Raimondo*, No. 1:20-CV-00426 JLT EPG, 2024 WL 1332516, at *24 (E.D. Cal. Mar. 28, 2024) ("In considering whether the 2023 IOP was narrowly tailored, the Court [ ] takes information regarding water supply costs into consideration.").

In sum, the Court finds all the Applicants have demonstrated they should be permitted to represent their unique interests in this litigation. However, as mentioned, in this Court's experience, the presence of multiple groups of intervenors continues to unnecessarily multiply the proceedings, despite what appears to have been a concerted effort by all parties to coordinate briefing. The State Water Contractors' recently filed opposition to the pending TRO motion (Doc. 51) provides a salient example. That brief is 16 pages long with more than 30 pages of attachments. Much of the brief contains generic background and general legal arguments that are not easily traceable to the State Water Contractors' *unique* interests in this litigation. Scouring briefs of this nature for material that is truly distinct from arguments advanced by Federal Defendants is not an appropriate use of this Court's limited time, particularly in the context of an emergency motion. The Court will no longer permit this to occur and thus will impose the following conditions.

First, in relation to any anticipated opposition to the pending motion for preliminary injunction, Applicants SHALL limit their briefing to points related to their unique interests and any subsequent briefs shall be limited to seven pages in length. This means they shall make every effort not to repeat (even with different wording and/or citations) arguments and topics already covered by Federal Defendants. Given the impending deadlines related to that motion, the Court

8

trusts that the parties will do their best to coordinate that approach, with the understanding that the Court will disregard material that is not obviously unique.

As for any future motions, the Court's experience in related litigation counsels for a much more regimented approach to Intervenor participation. In the past the Court has allocated a certain number of pages to the Intervenors and permitted them to coordinate briefing with Federal Defendants and among themselves. This has not sufficiently deterred duplicative briefing and multiplication of the proceedings. What has instead occurred appears to be, at least in part, a "divide and conquer" approach, where Federal Defendants and Defendant Intervenors sometimes split up the issues or offer slightly different approaches and arguments on the same topics. This has expanded the record significantly and caused delays in the Court's ability to address pending motions in this and other cases. A different approach is required. As a result, the Court directs the parties to meet and confer to establish a revised schedule for any future motions practice that allows time for Defendant Intervenors to review Federal Defendants' briefs and then submit to the Court a proposal that specifies the arguments/issues Defendant Intervenors intend to brief, their position(s) on why that additional information is both relevant and necessary to the fair disposition of the case, and the number of pages they require to articulate those issues.[5] Obviously, reviewing that request will also require the Court's time and cause a slight delay in any briefing schedule, but the alternative has proved unwieldy and unworkable.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above,

(1) The motions to intervene are **GRANTED IN PART**. All Applicants shall be permitted to permissively intervene pursuant to Fed. R. Civ. P. 24(b). Within 7 days of the date of this order, they SHALL file their answers on the docket.

(2) Further briefing on the pending motion for preliminary injunction shall be strictly limited to unique issues and to no more than 7 pages per intervenor group identified above: (1) State Water Contractors; (2) San Luis/Westlands; and (3) Friant.

---

[5] The Court suggests that one way to present this information may be by way of a chart akin to the kind of statements of fact submitted in a regular civil motion for summary judgment, which could be circulated to the opposing parties who can add a column to express their objections.

(3) Within 30 days of completion of briefing and any hearing on the pending motion for preliminary injunction, the Court directs the parties to meet and confer to establish a revised schedule for any future motions practice that conforms to the instructions set forth above.

IT IS SO ORDERED.

Dated:    July 2, 2026

UNITED STATES DISTRICT JUDGE