DANIEL J. O'HANLON, SBN 122380
dohanlon@kmtg.com
RUSSELL A. FRINK, SBN 302522
rfrink@kmtg.com
ANDREYA WOO NAZAL, SBN 327651
awoonazal@kmtg.com
JONATHAN WELDON, SBN 356980
jweldon@kmtg.com
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation
1331 Garden Hwy, 2nd Floor
Sacramento, CA 95833
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for Defendant-Intervenor,
San Luis & Delta-Mendota Water Authority

*Additional Parties and Counsel on Next Page*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, CENTER FOR BIOLOGICAL DIVERSITY, and FRIENDS OF THE RIVER,<br><br>        Plaintiffs,<br><br>        v.<br><br>U.S. BUREAU OF RECLAMATION, NATIONAL MARINE FISHERIES SERVICE, DOUG BURGUM, in his official capacity as the Secretary of the Interior, HOWARD LUTNICK, in his official capacity as the Secretary of Commerce, and SCOTT CAMERON, in his official capacity as the Acting Commissioner of the U.S. Bureau of Reclamation,<br><br>        Defendants. | Case No. 2:26-cv-00671-JLT EPG<br><br>**SAN LUIS & DELTA-MENDOTA WATER AUTHORITY AND WESTLANDS WATER DISTRICT, ET AL.'S JOINT OPPOSITION TO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     July 27, 2026<br>Time:    9:00 a.m.<br>Crtrm.:   4<br><br>Action Filed:   March 2, 2026<br>Judge:      Hon. Jennifer L. Thurston |

4938-0511-3533.1 010355.093

SAN LUIS & DELTA-MENDOTA WATER AUTHORITY AND WESTLANDS WATER DISTRICT, ET AL.'S
JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*ADDITIONAL COUNSEL*

REBECCA R. AKROYD, SBN 267305
*rebecca.akroyd@sldmwa.org*
General Counsel
REBECCA L. HARMS, SBN 307954
*rebecca.harms@sldmwa.org*
SAN LUIS & DELTA-MENDOTA WATER AUTHORITY
1331 Garden Hwy, 2nd Floor
Sacramento, CA 95833
Telephone: (916) 321-4321
Facsimile: (209) 826-9698

Attorneys for Defendant-Intervenor,
San Luis & Delta-Mendota Water Authority

SCOTT S. SLATER, SBN 117317
*sslater@bhfs.com*
*ELISABETH L. ESPOSITO, SBN 300983
*eesposito@bhfs.com*
MARY C. LOUM, SBN 300542
*mloum@bhfs.com*
BELLA K. SEWALL, *pro hac vice*
*bsewall@bhfs.com*
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1415 L Street, Suite 800
Sacramento, CA 95814
Telephone: (916) 594-9700
Facsimile: (916) 594-9701

Attorneys for Defendant-Intervenors,
Westlands Water District, Westlands Water
District Distribution District No. 1, and
Westlands Water District Distribution District
No. 2

4938-0511-3533.1 010355.093                    2

SAN LUIS & DELTA-MENDOTA WATER AUTHORITY AND WESTLANDS WATER DISTRICT, ET AL.'S
JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I.      INTRODUCTION

Consistent with the Court's order granting permissive intervention (Doc. 56), in this memorandum and the accompanying declarations of Pablo Arroyave and Allison Febbo, the San Luis & Delta-Mendota Water Authority ("SLDMWA") and Westlands Water District ("Westlands") explain the specific potential consequences of the requested injunction on their unique interests, avoid repetition, and provide non-duplicative argument as to Plaintiffs' failure to establish a likelihood of irreparable harm given their improper use of temperature dependent mortality ("TDM") modeling as demonstrated in the declaration of Bradley Cavallo.

## II.    PLAINTIFFS MISINTERPRET AND MISREPRESENT TEMPERATURE DEPENDENT MORTALITY DATA, WHICH WHEN PROPERLY UNDERSTOOD DOES NOT SUPPORT THEIR ARGUMENT OF IRREPARABLE HARM

Even assuming *arguendo* that Plaintiffs could show a likelihood of success on the merits, they are not entitled to injunctive relief because they fail to establish a likelihood of irreparable harm in the absence of an injunction. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Plaintiffs rely solely on the declaration of Dr. Rosenfield to establish irreparable harm based on anticipated high levels of TDM. (*See* Doc. 47-1 at 22-27.) In addition to improperly comparing TDM modeling undertaken by the Bureau of Reclamation ("Reclamation") and the Southwest Fisheries Science Center ("SWFSC") as described by Federal Defendants (*see* Doc. 50 at 13-14, 17-18), Dr. Rosenfield's analysis improperly relies on TDM as a method for evaluating population-level impacts to winter-run Chinook salmon instead of as a tool for comparing temperature risk between alternative Shasta operations. (Declaration of Bradley Cavallo ("Cavallo Decl."), ¶¶ 9-10. Reclamation (in its Biological Assessment) and NMFS (in its BiOp) both relied on TDM as a tool for comparing temperature risk to winter-run Chinook salmon, and not to provide precise predictions of actual temperature-related egg mortality suitable for evaluating population-level impacts. (*Id*., ¶11.) This is consistent with SWFSC's caveat that "[TDM] model outputs should not be interpreted as precise predictions or relied upon as the sole basis for operation or regulatory decisions without independent validation and expert judgement."(Doc. 50-3 at 63-65.)

Furthermore, Dr. Rosenfield relies on data from 2025 to argue that Reclamation's intended management of Shasta would lead to extreme levels of TDM. (Doc. 47-3, ¶ 84.) However, the actual

SAN LUIS & DELTA-MENDOTA WATER AUTHORITY AND WESTLANDS WATER DISTRICT, ET AL.'S
JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

timing of spawning in 2025 was approximately two weeks later than the typical spawning distribution, and therefore is not an appropriate representation of spawning likely to occur this year. (Cavallo Decl., ¶¶ 12-14.) Thus, given these material flaws in Dr. Rosenfield's analysis, his opinion is neither factually nor technically supported and of no probative value. *See Diero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (unsubstantiated testimony is unreliable and inadmissible); *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 590 (1993) (expert testimony based on "unsupported speculation" is inadmissible).

Plaintiffs acknowledge they must show Reclamation's conduct "is likely to harm the protected species at issue[.]" (Doc. 47-1 at 22.) The declaration by Dr. Rosenfield is based on a false assumption about TDM and the actual timing of this year's spawning and therefore does not support any such showing. Because Plaintiffs do not present any additional support for their claims of irreparable harm they have failed to meet their burden to demonstrate injunctive relief is necessary or appropriate.

**III.   PLAINTIFFS' REQUESTED INJUNCTION SHOULD ALSO BE DENIED GIVEN THE POTENTIAL CONSEQUENCES OF INJUNCTIVE RELIEF ON THE AREAS SERVED BY WESTLANDS AND OTHER MEMBER AGENCIES OF THE SLDMWA**

An injunction must be narrowly tailored to avoid the irreparable harm identified. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 823 (9th Cir. 2018). "There must be a sufficient causal connection between the alleged irreparable harm and the activity to be enjoined, but a plaintiff need not further show that the action sought to be enjoined is the exclusive cause of the injury." *Id*. (internal quotation and citation omitted). Moreover, "[i]t is not an abuse of discretion for a court to issue an injunction that does not completely prevent the irreparable harm that it identifies." *Id*. A court may decline to impose injunctive relief that is infeasible. *Pac. Coast Fed'n of Fishermen's Associations v. Raimondo,* No. 120CV00426DADEPG, 2022 WL 789122, at *37 (E.D. Cal. Mar. 11, 2022) (citing *NWF v. NMFS*, No. CV 01-640-RE, 2005 WL 3576843, at *7 (D. Or. Dec. 29, 2005) (declining to order requested ESA relief where the proposed measures were not feasible). Even in an ESA case, courts may consider societal harms that are not purely economic when fashioning equitable relief. *Pac. Coast Fed'n of Fishermen's Associations v. Gutierrez*, 606

F. Supp. 2d 1195, 1213 (E.D. Cal. 2008) (suggesting a court may consider evidence regarding the health and safety effects of secondary adverse impacts such as land subsidence, land fallowing leading to air quality impacts, and community dislocations arising from job losses). This Court has considered impacts on the food supply and on disadvantaged communities, schools, and businesses resulting from water-delivery restrictions. *Pac. Coast Fed'n of Fishermen's Associations v. Raimondo*, No. 120CV00426DADEPG, 2022 WL 789122, at *62 (E.D. Cal. Mar. 11, 2022). And, the Ninth Circuit recently explained that "district courts retain their equitable discretion when considering a mandatory preliminary injunction under the ESA that could endanger other listed species." *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 600 (9th Cir. 2025).

The injunction Plaintiffs request is not narrowly tailored and threatens to cause broad collateral harm. How and whether Reclamation could feasibly reoperate the CVP to achieve 2.4 million acre-feet in storage in Shasta Reservoir at the end of September 2026 is unknown, as are the full potential consequences of ordering Reclamation to try. One likely consequence of the requested injunction, however, would be a reduction in releases from Shasta Reservoir and of flow in the Sacramento River entering the Delta and therefore a reduced ability for the CVP to pump water from the Delta at the C. W. "Bill" Jones Pumping Plant ("Jones Pumping Plant"). (Declaration of Pablo Arroyave ("Arroyave Decl."), ¶ 6.) To assess and describe the potential impacts that loss of pumping could have on the unique interests of SLDMWA's member agencies, declarants Pablo Arroyave and Allison Febbo have assumed the requested injunction would cause a 5% reduction in current CVP contract allocations, translating to roughly 100,000 acre-feet of lost CVP supply this year. As is explained below, this reduction in CVP water supply would produce substantial collateral harm to the farms, communities, businesses interests, and the environment. Larger reductions would cause even greater harm, including potentially to other listed species that inhabit wildlife refuges served with CVP water.

### A.    Reduced CVP Allocations Would Cause Socioeconomic and Environmental Harms

Environmental and public health harms would follow directly from a mid-season loss of

CVP surface water and cannot be meaningfully mitigated during the current water year.

### 1.   Damage From Increased Groundwater Pumping

Historically, growers within SLDMWA member agencies' service areas, including Westlands, have compensated for reduced surface-water deliveries under their contracts with Reclamation by increasing groundwater pumping. (Arroyave Decl., ¶ 8; Declaration of Allison Febbo ("Febbo Decl."), ¶ 12.) Accordingly, reduced CVP deliveries would likely force additional groundwater pumping from critically overdrafted basins, depleting reserves previously stored for future droughts and emergencies under a Department of Water Resources approved Groundwater Sustainability Plan ("GSP"). (Arroyave Decl., ¶ 8; Febbo Decl., ¶¶ 10-12.) The removal of this reserve stresses the groundwater basin and can lead to harsh consequences ("undesirable results"), including land subsidence, declining groundwater quality, reduced availability for shallow domestic wells, and chronic lowering of groundwater levels. (Arroyave Decl., ¶ 8; Febbo Decl., ¶ 13.) Westlands has currently largely arrested subsidence but unexpected reductions in surface water availability threaten the integrity of the GSP and the resumption of subsidence that damages critical Central Valley conveyance infrastructure by reducing canal capacity. (Febbo Decl., ¶ 14.)

### 2.   Damage to Crops, Orchards, and Communities Dependent on Agricultural Production

Mid-season allocation reductions would reduce irrigation supplies for already-planted row crops and permanent plantings, resulting in lower yields, diminished crop quality, crop losses, and reduced long-term productivity for orchards and vineyards. (Arroyave Decl., ¶ 9; Febbo Decl., ¶ 15.) The timing here would magnify these harms because growers and member agencies have already made planting, irrigation, and operational decisions in reliance on existing allocations. Given current dry hydrology and the advanced stage of the water year, any lost surface-water supplies cannot be replaced later, and water-transfer opportunities have effectively closed, leaving little or no practical means to mitigate these losses. (Arroyave Decl., ¶ 7; Febbo Decl., ¶¶ 8–10.)

As a result, growers may be forced to fallow later-planted or otherwise uncommitted acreage and forego additional crop production. (Arroyave Decl., ¶ 10; Febbo Decl., ¶¶ 15–17.) Fallowing represents the most severe outcome because it eliminates both agricultural production and associated

employment while also degrading air quality through increased dust emissions and contributing to insect infestations threatening adjacent farmlands. (*Id.*) Employment losses would extend beyond farm workers to businesses throughout the agricultural economy, including suppliers of equipment, fertilizer, fuel, seed, and agricultural services. Within SLDMWA's service area, approximately 2.5 acre-feet of water are required to irrigate one acre; accordingly, every 1,000 acre-feet of lost CVP supply could idle approximately 400 acres of farmland, reducing economic output while increasing dust emissions from fallowed lands. (Arroyave Decl., ¶¶ 9–10; Febbo Decl., ¶¶ 15–18.)

### 3.    Disproportionate Impacts on Disadvantaged Communities

Allocation reductions would disproportionately burden disadvantaged communities served by SLDMWA member agencies. (Arroyave Decl., ¶ 12.) For example, the community of Santa Nella already faces an estimated 33% water supply shortfall under existing allocations; a further 5% reduction would increase that deficit to approximately 40%. (*Id.*) These communities would also bear disproportionate air-quality burdens associated with increased diesel-powered groundwater pumping and dust generated by additional fallowed acreage. (Arroyave Decl., ¶¶ 9–12; Febbo Decl., ¶¶ 15–18.) The combination of reduced water reliability, economic losses, and increased pollution would exacerbate existing environmental justice concerns. (*Id.*)

### B.    Wildlife Refuges and Sensitive Species Could be Adversely Affected if Supplies Are Reduced

It is unknown how deep the cuts to CVP water supply from the proposed injunction would be. If compliance with the injunction required cuts to the current 100% allocation of Level 2 supplies for wildlife refuges, then listed species would be harmed. CVP exports support wildlife refuges served through Grassland Water District, a SLDMWA member agency that supplies approximately 75,000 acres of managed wetlands and conveys water to adjacent state and federal refuges within the Grassland Ecological Area. (Arroyave Decl., ¶ 13.) These wetlands support millions of migratory birds as well as species including the threatened giant garter snake, whose last known population in the western San Joaquin Valley occurs there. (*Id.*) If refuge supplies are reduced, however, the wetlands and species that depend on them would likewise be harmed. (*Id.*)

///

## IV.    CONCLUSION

Plaintiffs are not entitled to injunctive relief because they fail to establish a likelihood of irreparable harm in the absence of an injunction. The requested injunction could also have far-reaching and damaging consequences for the people, communities, farms and wildlife in the areas served by SLDMWA's member agencies including Westlands. The Court may and should consider that harm and exercise its equitable discretion to deny injunctive relief.

DATED:  July 13, 2026                    KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
                                                    A Professional Corporation


                                                    By:    _____/s/ Daniel J. O'Hanlon_____
                                                                Daniel J. O'Hanlon
                                                                Attorneys for Defendant-Intervenor,
                                                                San Luis & Delta-Mendota Water Authority


DATED:  July 13, 2026                    BROWNSTEIN HYATT FARBER SCHRECK, LLP


                                                    By:    _____/s/ Elisabeth L. Esposito_____
                                                                Elisabeth L. Esposito
                                                                Attorneys for Defendant-Intervenors, Westlands
                                                                Water District, Westlands Water District
                                                                Distribution District No. 1, and Westlands Water
                                                                District Distribution District No. 2


### CERTIFICATE OF SERVICE

I, Elisabeth L. Esposito, hereby certify that on July 13, 2026, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 13th day of July, 2026.


                                                    /s/ Elisabeth L. Esposito
                                                    Elisabeth L. Esposito