Jennifer T. Buckman, SBN 179143
Zachary C. Castagnola-Johnson, SBN 360139
BKS Law Firm, PC
1600 K Street, Suite 4A
Sacramento, California 95814
Telephone: (916) 446-4254
jtb@bkslawfirm.com
zcj@bkslawfirm.com

Attorneys for Defendant-Intervenor
CONTRA COSTA WATER DISTRICT

***Exempt from Filing Fees*
*Gov. Code, § 6103***

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, CENTER FOR BIOLOGICAL DIVERSITY, and FRIENDS OF THE RIVER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BUREAU OF RECLAMATION, NATIONAL MARINE FISHERIES SERVICE, DOUG BURGUM, in his official capacity as the Secretary of the Interior, HOWARD LUTNICK, in his official capacity as the Secretary of Commerce, and SCOTT CAMERON, in his official capacity as the Acting Commissioner of the U.S. Bureau of Reclamation,<br><br>Defendants. | Case No. 2:26-cv-00671-JLT-EPG<br><br>**[REVISED] NOTICE OF MOTION AND MOTION OF CONTRA COSTA WATER DISTRICT TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Judge: Hon. Jennifer L. Thurston<br>Ctrm: 10<br><br>First Am. Complaint Filed: June 19, 2026 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** the Contra Costa Water District ("CCWD") will and hereby does move for leave to intervene as a defendant in this action, currently pending in the Courtroom of the Honorable Jennifer L. Thurston, United States District Court for the Eastern District of California, Fresno Division, 2500 Tulare Avenue, Fresno, California.

In accordance with the Court's August 10, 2026 Minute Order, ECF No. 85, and its March 25, 2026 Standing Order, ECF No. 16, CCWD has met and conferred with the other parties to discuss the substance of its motion and potential resolution. Declaration of Zachary Castagnola-Johnson in Support of CCWD's Motion to Intervene ("Castagnola Decl."), filed concurrently with these papers, ¶ 3. Plaintiffs requested that CCWD explicitly agree to intervention in accordance with the conditions set forth in the Court's July 2, 2026 Order Granting Motions to Intervene, ECF No. 56. *Id.* CCWD has agreed to this term. *Id.* No party has expressed any objections to CCWD's intervention with this condition. *Id.* at ¶ 5.

CCWD submits this motion to intervene with the understanding that it shall

> meet and confer [with the parties] to establish a revised schedule for any future motions practice that allows time for Defendant Intervenors to review Federal Defendants' briefs and then submit to the Court a proposal that specifies the arguments/issues Defendant Intervenors intend to brief, their position(s) on why that additional information is both relevant and necessary to the fair disposition of the case, and the number of pages they require to articulate those issues.

ECF No. 56, p. 9:12-16. CCWD also agrees to comply with any other terms of the Court's August 3, 2026 Order that apply to the remaining proceedings in this case.

With recognition of the foregoing conditions upon its intervention, CCWD moves for an order granting it leave to intervene in this action as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, and alternatively for permissive intervention pursuant to Rule 24(b). This motion for intervention as of right is made on the grounds that Plaintiffs assert claims under the federal Endangered Species Act ("ESA") and CCWD meets all four intervention factors: (1) CCWD's Motion is timely; (2) those claims threaten CCWD's legally protected interests in water supplies provided by the Central Valley Project; (3) disposition of this action in CCWD's absence

may impair or impede its ability to protect those interests; and (4) CCWD's interests are not adequately represented by the existing parties to this action.

In the alternative, this Court may grant permissive intervention under Rule 24(b) because Plaintiffs' ESA claims and CCWD's defenses to those claims concern common questions of law and fact, and CCWD's intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

This Motion is based on this Revised Notice of Motion, the attached Revised Memorandum, the Declaration of Deanna Sereno in Support of Contra Costa Water District's Motion to Intervene and exhibits thereto, the Declaration of Zachary Castagnola-Johnson in Support of Contra Costa Water District's Motion to Intervene, a Proposed Answer in intervention, a Revised Proposed Order, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated: August 14, 2026

Respectfully submitted,

BKS Law Firm, PC

By:____________________

JENNIFER T. BUCKMAN
ZACHARY C. CASTAGNOLA-JOHNSON

Attorneys for Defendant-Intervenor
CONTRA COSTA WATER DISTRICT

**TABLE OF CONTENTS**

MEMORANDUM ........ 1

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. The Central Valley Project ........ 2

B. CCWD ........ 3

C. The Federal Endangered Species Act, Action 5, and Plaintiffs' Allegations ........ 5

III. ARGUMENT ........ 6

A. CCWD is Entitled to Intervene as a Matter of Right ........ 7

1. This Motion Is Timely ........ 7

2. CCWD Has Significant Protectable Interests Related to the Subject of This Action ........ 8

3. Disposition of This Case in CCWD's Absence May, as a Practical Matter, Impair or Impede Its Ability to Protect Its Interests ........ 8

4. CCWD's Interests Are Not Adequately Represented by Existing Parties ........ 9

B. In the Alternative, CCWD Should Be Granted Permissive Intervention ........ 11

IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018) ....................9

*California Natural Resources Agency v. Ross et al.*,
Case No. 1:20-cv-00426-DAD-SKO (E.D. Cal.) ....................1, 8, 12

*Central Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) ....................2

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ....................7, 8, 9

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*,
No. 21-16382, 2022 WL 3656444 (9th Cir. Aug. 24, 2022) ....................11

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002) ....................11

*Laub v. U.S. Dep't of the Interior*,
342 F.3d 1080 (9th Cir. 2003) ....................8

*Levinson Richmond Terminal Corp. v. City of Richmond*,
482 F. Supp. 3d 944 (N.D. Cal. 2020) ....................12

*Lower Ark. Valley Water Conservancy Dist. v. United States*,
252 F.R.D. 687 (D. Colo. 2008) ....................12

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ....................11

*Natural Resources Defense Council v. Haaland*,
102 F.4th 1045 (9th Cir. 2024) ....................2

*Northwest Forest Resource Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) ....................7

*Pacific Coast Federation of Fishermen's Associations v. Ross, et al.*,
Case No. 1:20-cv-00431-DAD-EPG (E.D. Cal.) ....................1, 8, 10, 12

*Purnell v. City of Akron*,
925 F.2d 941 (6th Cir. 1991) ....................9

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ....................10

*Southwest Center for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......................................................................7, 8, 9, 10

*U.S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978)...........................................................................................12

*U.S. v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ..........................................................................................8

*United States v. Carpenter*,
298 F.3d 1122 (9th Cir. 2002) ........................................................................................7

*Western Watershed Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) ...........................................................................................7

**Statutes**

16 U.S.C. § 1536(a)(2) ..........................................................................................1, 5, 6

16 U.S.C. § 1536(b)(3)..................................................................................................5

1937 Rivers and Harbors Act, Pub. L. No. 75-397, 50 Stat. 844, 850, § 2(a) ...............................2

Central Valley Project Improvement Act, Pub. L. No. 102-575, 106 Stat. 4706..................2, 3, 4

**Court Rules**

Fed. R. Civ. Proc. R. 24(a) ....................................................................................2, 6, 9, 11

Fed. R. Civ. Proc. R. 24......................................................................................6, 9, 12

Fed. R. Civ. Proc. R. 24(a)(2) .........................................................................................8

Fed. R. Civ. Proc. R. 24 (b).................................................................................2, 6, 11, 12

**Regulations**

50 C.F.R. § 402.01(a) (2026) .........................................................................................5

50 C.F.R. § 402.14(i) (2026)...........................................................................................5

**MEMORANDUM**

## I. INTRODUCTION

Contra Costa Water District ("CCWD") respectfully requests leave to intervene in this action as a defendant to join the United States Bureau of Reclamation ("Reclamation") and the National Marine Fisheries Service ("NMFS") (collectively, "Federal Defendants"), as well as San Luis & Delta-Mendota Water Authority, Westlands Water District, State Water Contractors, Friant Water Authority and Arvin-Edison Water Storage District ("Defendant-Intervenors") in defending against the claims brought by Plaintiffs San Francisco Baykeeper, Center for Biological Diversity, and Friends of the River ("Plaintiffs").

CCWD is one of the largest urban water districts in California and it is entirely dependent on diversions from the Sacramento-San Joaquin Delta ("Delta") for the water supply it delivers to approximately 521,000 people in Contra Costa County. The Central Valley Project ("CVP") constitutes CCWD's principal source of water. Due to this fact, and the location of its facilites, both CCWD's operations and its water supplies may be affected by the Court's resolution of this lawsuit.

The current litigation is the latest in a string of related lawsuits in this Court concerning Reclamation's coordinated long-term operations of the CVP with the State Water Project ("SWP"). Previously, in two suits challenging the 2019 biological opinions issued by NMFS and the United States Fish and Wildlife Service ("FWS") under section 7 of the Endangered Species Act ("ESA"),[1] this Court granted CCWD's request to intervene. It should do so again here.

Plaintiffs, a coalition of three environmental non-profit organizations, now challenge Reclamation's operations of the CVP under NMFS' 2024 Biological Opinion ("2024 NMFS BiOp"), which superseded the 2019 Biological Opinion challenged in the prior litigation. FWS and NMFS each issued new biological opinions regarding the long-term operation of the CVP and SWP in November and December 2024 (together, the "2024 BiOps"). Subsequently, in 2025, Reclamation developed "Action 5," which proposed to update certain portions of its long-term plan

---

[1] The Plaintiffs and Federal Defendants stipulated to CCWD's intervention in the 2019 biological opinions cases, and this Court granted intervention to CCWD. *California Natural Resources Agency v. Ross et al.*, Case No. 1:20-cv-00426-DAD-SKO (E.D. Cal.); *Pacific Coast Federation of Fishermen's Associations v. Ross, et al.*, Case No. 1:20-cv-00431-DAD-EPG (E.D. Cal.).

for the coordinated operations of the CVP with the SWP. Reclamation issued a Record of Decision adopting Action 5 on December 19, 2024.

Through this suit, Plaintiffs seek injunctive relief and a Court order requiring the Federal Defendants to reinitate consultation on the effects of Action 5. ECF No. 46 (First Amended Complaint for Declaratory and Injunctive Relief ), ¶ 12. If granted, the remedies Plaintiffs seek threaten to directly impact both CCWD's operations as a Delta diverter and its water supplies.

For these reasons and as explained in more detail below, CCWD meets the requirements of Federal Rule of Civil Procedure Rule 24(a) for intervention as of right. This motion is timely; CCWD's affected interests are legally protectable interests recognized both by contract and statute; disposition of this action in CCWD's absence may impair or impede its ability to protect those interests; and CCWD's interests cannot be adequately represented by any existing party to this action. Accordingly, CCWD should be granted leave to intervene as of right under Rule 24(a). In the alternative, CCWD should be granted permissive intervention under Rule 24(b). CCWD submits this motion with the explicit agreement to comply with all applicable conditions imposed on intervenors in the Court's July 2, 2026 Order Granting Motions to Intervene, ECF No. 56.

## II. BACKGROUND

### A. The Central Valley Project

The CVP is the nation's largest water storage and transport system. *Natural Resources Defense Council v. Haaland*, 102 F.4th 1045, 1054 (9th Cir. 2024). Reclamation owns the CVP facilities, and it operates them in coordination with the California Department of Water Resources' operation of the SWP. *Central Delta Water Agency v. United States*, 306 F.3d 938, 943 (9th Cir. 2002). The CVP supplies water for agricultural, municipal, industrial, and environmental protection purposes pursuant to the priorities defined by Section 2(a) of the 1937 Rivers and Harbors Act, Pub. L. No. 75-397, 50 Stat. 844, 850 ("1937 Act"), as amended by the Central Valley Project Improvement Act, Pub. L. No. 102-575, 106 Stat. 4706 ("CVPIA"). *Id.*

\\\

\\\

**B. CCWD**

CCWD was formed in 1936 as the legal entity to contract for, purchase from, and distribute water provided by Reclamation for irrigation and industrial uses. Declaration of Deanna Sereno in Support of CCWD's Motion to Intervene ("Sereno Decl.") at ¶ 5. In its 90 years of operations, CCWD has evolved into one of the largest urban water districts in California. *Id.* CCWD's mission is "to strategically provide a reliable supply of high-quality water at the lowest cost possible, in an environmentally responsible manner." *Id.* It fulfills its mission by delivering safe and clean water to communities across central and eastern Contra Costa County, by acting as a leader in drinking water treatment technology, and by maintaining source water protection. *Id.*

CCWD provides both wholesale and retail water for municipal, residential, commercial, industrial, landscape irrigation, and agricultural customers. *Id.* at ¶ 6. Wholesale untreated water customers of CCWD include the cities of Antioch, Pittsburg, and Martinez, as well as Diablo Water District, and wholesale treated water customers include the cities of Antioch and Brentwood and the Golden State Water Company in Bay Point. *Id.* Major industrial customers, such as oil refineries, receive retail untreated water from CCWD. *Id.* CCWD provides retail treated water to approximately 210,000 residents in central Contra Costa County. *Id.* CCWD's overall service area encompasses most of central and northeastern Contra Costa County, a total area of more than 140,000 acres, and supplies approximately 521,000 people. *Id.*

As noted above, the CVP is CCWD's primary water source. *Id.* at ¶ 10. This source is obtained under CCWD's repayment contract with Reclamation, which provides for a maximum delivery of 195,000 acre-feet per year ("AFY") of CVP supply but is subject to reduction during water shortages caused by regulatory restrictions and drought. *Id.* at ¶ 12. Reclamation's shortage policy for its municipal and industrial customers ("M&I Shortage Policy") within the CVP distinguishes between contractors such as CCWD and agricultural contractors during times of shortage. *Id.* at ¶ 13. Thus, contractors who deliver water for agricultural irrigation have different interests than contractors who deliver water for municipal, commercial and industrial uses.

While conservation measures implemented during droughts can significantly reduce overall demand, houses and businesses simply cannot be fallowed. When the CVP experiences water

supply shortages, CCWD must explore more costly short-term and long-term water transfers to patch together enough supply to meet its customers' needs. In 2000, CCWD re-entered into a long-term agreement with East Contra Costa Irrigation District ("ECCID") to purchase up to 8,200 AFY of water to be used for municipal and industrial purposes in areas common to both districts. That agreement includes an option to transfer up to 4,000 AFY of ECCID's surface water through a groundwater substitution dry year water transfer. *Id.* at ¶ 11. CCWD relied on this agreement to help meet water demands in the 2007-2009, 2015, and 2021-2022 drought years. *Id.*

To deliver its water supplies, CCWD controls and maintains a complex system of water transmission, treatment, and storage facilities in and adjacent to the Delta. *Id.* at ¶¶ 7-8. Pursuant to a contract with Reclamation, CCWD operates and maintains one Delta intake facility that is owned by Reclamation, the Rock Slough Intake. CCWD also owns and operates its own Delta facilities, including three other intake facilities which it uses to divert both CVP water and non-CVP water that it takes under independent water rights. *Id.* at ¶ 7. CCWD diverts water from the Delta at these four screened intake facilities and conveys that water through the 48-mile-long Contra Costa Canal. *Id.* The canal and associated facilities are part of the CVP but are operated and maintained by CCWD. *Id.*

CCWD maintains approximately 165,000 acre-feet of storage in four untreated water reservoirs, the most important of which is Los Vaqueros Reservoir. *Id.* at ¶ 8. These reservoirs are used for dry-year and emergency use, supplying water during peak demands, and protection of Delta fisheries. *Id.* Los Vaqueros Reservoir stores higher quality Delta water, which CCWD blends with Delta supplies during dry periods to balance and reduce elevated salinity levels that impair drinking water quality. *Id.* at ¶ 9. In addition to the water quality benefits, Los Vaqueros Reservoir stores water for emergency use in case of extreme drought or catastrophic interruption of CCWD's Delta supplies. *Id.* Los Vaqueros Reservoir is vital in enabling CCWD to meet the requirements in its own biological opinions and permits and to reduce demands on the Delta during periods of low flow. *Id.*

Due to the close proximity of CCWD's intake facilities to Reclamation's Delta diversions, CCWD and Reclamation coordinate their operations pursuant to an agreement. *Id.* at ¶ 13. Changes

to Reclamation's operations therefore have the potential to trigger changes to CCWD's operations as well. *Id.* at ¶¶ 18-20. Consequently, any changes to the 2024 NMFS BiOp that change how the CVP is operated could impact CCWD's Los Vaqueros Reservoir operations, along with CCWD's other important pumping and storage operations, and thereby impair CCWD's ability to improve water quality, protect Delta fisheries, and store water for drought emergencies. *Id.* at ¶¶ 9, 19-20.

**C. The Federal Endangered Species Act, Action 5, and Plaintiffs' Allegations**

Section 7 of the ESA requires federal agencies, such as Reclamation, to consult with NMFS to ensure any action they "authorize[], fund[], or carr[y] out … is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat" of listed species under NMFS' jurisdiction. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.01(a). The end result of consultation is often the issuance of a written biological opinion evaluating the effects of the proposed action on listed species and critical habitat. 16 U.S.C. § 1536(b)(3). Generally, biological opinions also include an incidental take statement ("ITS") prescribing the scope of authorized take that may occur as a result of the proposed action. *Id.* § 1536(b)(4); 50 C.F.R. § 402.14(i).

On December 6, 2024, NMFS concluded a reinitiation that had commenced in 2021 and issued its most recent biological opinion on long-term CVP and SWP operations.[2] The 2024 NMFS BiOp included an incidental take statement specifying the impact of incidental taking on listed fish species, nine reasonable and prudent measures necessary or appropriate to minimize such impact, and terms and conditions including, but not limited to, reporting requirements. NMFS concluded that the long-term operations of the CVP and SWP would not jeopardize listed species or adversely modify critical habitat. Sereno Decl. at ¶ 15.

\\\

\\\

[2] National Marine Fisheries Service, *Endangered Species Act Section 7(a)(2) Programmatic Biological Opinion for the Reinitiation of Consultation on the Long-Term Operation of the Central Valley Project and State Water Project* (Dec. 6, 2024): https://www.fisheries.noaa.gov/resource/document/endangered-species-act-section-7a2-programmatic-biological-opinion-reinitiation.

Later, in December 2025, Reclamation updated its operational plan for the CVP to incorporate what is referred to as Action 5.[3] Reclamation determined that the effects of Action 5 are within the effects analyzed in the 2024 BiOps. Sereno Decl. at ¶ 16. Plaintiffs challenge this determination through the First Amended Complaint, which they filed against Federal Defendants on June 19, 2026. ECF No. 46.

Plaintiffs allege three claims arising under the ESA involving Reclamation's operations of the CVP: (1) Reclamation violated ESA section 7(a)(2) and its implementing regulations because, according to Plaintiffs, incidental take of individual fish at the Delta pumps in 2025 exceeded the levels anticipated in the 2024 NMFS BiOp, *id.* ¶ 126; (2) Reclamation and NMFS are in violation of section 7(a)(2) of the ESA for failing to reinitiate consultation after the ITS "take limit" was allegedly exceeded and after Reclamation modified operations pursuant to Action 5, *id.* ¶¶ 131–138; and (3) Reclamation abrogated the incidental take coverage of the 2024 NMFS BiOp and ITS, making the agency liable under section 9 of the ESA for take of endangered fish species, *id.* ¶ 140. Plaintiffs' prayer for relief seeks declaratory relief confirming the ESA violations they allege. *Id.* at 41. Plaintiffs also request that the Court enjoin Reclamation from further unpermitted take of listed species, *id.*, and order Federal Defendants to reinitiate consultation in order "to produce a new biological opinion." *Id.* ¶ 12.

Because CCWD relies on the CVP for the vast majority of its water supplies, and because CCWD operates facilities within the Delta, any changes to CVP operations occurring as a result of this lawsuit will affect CCWD's supply availability, reliability, and operations.

## III. ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure sets forth the requirements to intervene in a pending federal action. Fed. R. Civ. P. 24. CCWD seeks intervention as of right under Rule 24(a), or, in the alternative, permissive intervention under Rule 24(b).

\\\

---

[3] Bureau of Reclamation, *Record of Decision Long-Term Operation of the Central Valley Project and State Water Project* (Dec. 2025): https://cawaterlibrary.net/wp-content/uploads/2025/12/Action-5_Record-of-Decision_signed.pdf.

### A. CCWD is Entitled to Intervene as a Matter of Right

A nonparty is entitled to intervention as of right when it "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *Western Watershed Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (citation omitted). Courts interpret these requirements broadly in favor of intervention. *Id.* "In addition to mandating broad construction, our review is guided primarily by practical considerations, not technical distinctions." *Id*. (citation omitted). In reviewing the motion to intervene, courts take all well-pleaded, non-conclusory allegations in the papers, including the proposed complaint or answer in intervention and declarations supporting the motion, as true. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("*Southwest Center*").

#### 1. This Motion Is Timely

Whether a motion to intervene is timely turns on three considerations: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002). This motion is timely under the applicable criteria.

Plaintiffs filed their Amended Complaint on June 19, 2026. The Court has issued no substantive orders, and the Administrative Record has not been prepared or lodged. CCWD filed this motion without delay and seeks to intervene at the outset of this litigation, before any determinations have been made regarding the issues raised by the Complaint. That is more than sufficient to satisfy the timeliness requirement for intervention as of right. *See Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996); *see also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("traditional features" of timely intervention include early filing and absence of prejudice or disruption).

\\\

\\\

\\\

### 2. CCWD Has Significant Protectable Interests Related to the Subject of This Action

CCWD meets the "interest" test for intervention as a matter of right because CCWD has significant contractual and statutorily-recognized protectable rights to CVP water. "An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks omitted). This is "not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the interest test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process[.]" *Id*.

CCWD has entered into a contract with Reclamation under which Reclamation delivers up to 195,000 AFY of CVP water to CCWD. Sereno Decl. at ¶ 12, Exh. A, pp. 14-18 (Articles 3(a), (f) and (j)). An adverse impact to CVP water supplies such as this constitutes an "invasion of a legally protected particularized interest." *See Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1086 (9th Cir. 2003); *see also Southwest Center*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests supporting intervention as of right.").

Based on its protected interests in CVP water supply, CCWD has previously been granted leave to intervene in the two related cases involving the 2019 biological opinions and the CVP. *California Natural Resources Agency v. Ross et al.*, Case No. 1:20-cv-00426-DAD-SKO (E.D. Cal.); *Pacific Coast Federation of Fishermen's Associations v. Ross, et al.*, Case No. 1:20-cv-00431-DAD-EPG (E.D. Cal.). Since CCWD has legally protectable interests relating to the subject of the action, this element is satisfied.

### 3. Disposition of This Case in CCWD's Absence May, as a Practical Matter, Impair or Impede Its Ability to Protect Its Interests

Plaintiffs' requested relief would have a legal and practical effect on CCWD's interests. Rule 24(a)(2) requires that "disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest." *Citizens for Balanced Use v. Montana Wilderness*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). This

burden is minimal. A would-be intervenor must show only that impairment of its legal interest is possible if intervention is denied. *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991). Courts often follow the guidance of the Advisory Committee notes for the 1966 amendments to Rule 24(a), which state that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Committee notes to 1966 amendments; *see Southwest Center*, 268 F.3d at 822 (quoting and following the 1966 Amendment Committee Notes).

Here, Plaintiffs seek to invalidate certain operations of the CVP and reinitiate consultation to change the 2024 NMFS BiOp, the result of which may impair both CCWD's contractual rights to receive CVP water and its operations within the Delta. No other CVP contractor operates facilities that divert water from the Delta as CCWD does. *See* Sereno Decl., ¶¶ 6-14. If Plaintiffs' request for relief were granted in CCWD's absence, there would be no practical way for the CCWD to protect its distinct and important interests. Thus, this element is satisfied.

**4. CCWD's Interests Are Not Adequately Represented by Existing Parties**

CCWD is not adequately represented by the existing parties in this case. A court evaluating adequacy of representation examines three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). CCWD's burden on this point is minimal. This prong is satisfied where a movant's interests are "potentially more narrow than the public's at large" and where government representation of those interests "'*may have been inadequate*.'" *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (emphasis added in *Allied Concrete*).

\\\

Here, CCWD's interest in the operations of the CVP is distinguishable from the Federal Defendants'. Reclamation and NFMS will presumably defend their compliance with the ESA, but do not share CCWD's interests in protecting its Delta operations, nor is Reclamation statutorily charged – as CCWD is – with ensuring reliable water supplies that CCWD's customers can put to municipal and industrial uses. Sereno Decl. at ¶¶ 5-7. As the only contractor with facilities in the Delta, CCWD has a unique interest in protecting its Delta diversions from operational changes that could result in a diminished ability to deliver high-quality drinking water to its customers or a reduced ability to store high-quality water in Los Vaqueros Reservoir that can subsequently be used to reduce CCWD's Delta diversions during times of drought or heightened salinity levels in the Delta. *Id.* at ¶¶ 8-9. And if Plaintiffs prevail, it is CCWD and its water users, not NMFS or Reclamation, who would suffer the consequences of the CVP's reduced ability to deliver water under the CCWD contract. *Id.* at ¶¶ 18-22. For example, if CCWD receives less water from the CVP as a result of changes imposed through this lawsuit, CCWD will have to incur additional costs to secure replacement supplies. *Id.* at ¶¶ 11, 21. Obviously, this impact will not fall upon Reclamation.

Under these circumstances, Reclamation cannot be expected to fully represent and protect CCWD's specific interests in this litigation. *See Southwest Center*, 268 F.3d at 823 (noting that FWS, "a federal agency . . . cannot be expected under the circumstances presented to protect these private interests [of the proposed Intervenor]"); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (permitting timber industry to intervene as defendants in case brought against the government by environmental groups because "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry"). Indeed, by stipulating to CCWD's intervention in previous litigation related to the CVP, Federal Defendants have previously acknowledged these divergent interests. *See* Stipulation and Order Regarding Intervention of Contra Costa Water District, *Pacific Coast Federation of Fishermen's Associations v. Ross, et al.*, Case No. 1:20-cv-00431-DAD-EPG (E.D. Cal.).

Nor can the other intervenors, all of which deliver water for agricultural irrigation or represent water agencies with interest in SWP water, fully represent CCWD's specific interests.

None of these intervenors has the same responsibility for or interest in CCWD's CVP water supplies or operations. *See, e.g., Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977) (intervention is appropriate where the applicant's "overall point of view might be shared" with other intervenors but its "particular" interests are distinct). CCWD alone is bound by its contracts with Reclamation, and it alone will bear the financial burden of seeking additional water supplies to meet the demands of its 521,000 customers should its CVP supply be impacted by Plaintiffs' action. *See* Section II.B *supra*.

Thus, CCWD's interests will not be adequately represented by existing parties to the litigation, and this element is satisfied.

**B. In the Alternative, CCWD Should Be Granted Permissive Intervention**

Given its interests in this case, CCWD meets the standard for intervention as of right under Rule 24(a) and intervention on that basis is appropriate here. However, even if CCWD did not satisfy the requirements for intervention as of right, it should be granted permissive intervention under Rule 24(b). Under Rule 24(b), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). As long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," permissive intervention is appropriately granted. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002) (quoting Rule 24(b)), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d. 1173 (9th Cir. 2011). A proposed intervenor's unique interest and expertise on an issue, as well as the likelihood of the intervenor raising unique arguments, support granting permissive intervention. *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-16382, 2022 WL 3656444 (9th Cir. Aug. 24, 2022) (finding District Court failed to consider their unique interests and expertise, and that the current parties would not undoubtedly make all of the same arguments as proposed intervenors).

CCWD satisfies the requirements for permissive intervention. First, as shown above in Section III.A.1, this motion is timely. Second, CCWD's defenses raise common questions with the

Plaintiffs' action, insofar as CCWD seeks to defend against each of Plaintiffs' three claims, together with the Federal Defendants and Defendant-Intervenors, that Reclamation has violated the ESA in its operations of the CVP. *See* CCWD's Proposed Answer to First Am. Complaint, ¶¶ 117-143; *Levinson Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 968 (N.D. Cal. 2020) (proposed intervenors seeking to defend a government action against the plaintiff's lawsuit satisfied the common question prong when their defenses shared direct questions of law with the main action). Third, granting intervention will not unduly delay or prejudice the other parties, as CCWD's intervention at this stage will not complicate these proceedings or consume additional resources of the court. *Cf., Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 691 (D. Colo. 2008). In addition, when the parties brief the issues on the merits, CCWD's intervention "will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented" by further illustrating the possible consequences of Plaintiffs' action on CVP contractors and on the Delta itself. *Cf., U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-192 (2d Cir. 1978) (citation omitted).

And finally, as noted above in Section III.A.2, CCWD was granted permission to intervene in a challenge to the 2019 biological opinions, so there is precedent establishing that CCWD qualifies for intervention under Rule 24. *See California Natural Resources Agency v. Ross et al.*, Case No. 1:20-cv-00426-DAD-SKO (E.D. Cal.); *Pacific Coast Federation of Fishermen's Associations v. Ross, et al.*, Case No. 1:20-cv-00431-DAD-EPG (E.D. Cal.). Therefore, in the alternative to intervention as of right, the Court should exercise its discretion to allow intervention by CCWD pursuant to Rule 24(b).

\\\

\\\

\\\

\\\

\\\

\\\

## IV. CONCLUSION

For all the foregoing reasons, CCWD respectfully requests that this Court grant CCWD intervention as a matter of right, or in the alternative, permissive intervention.

Dated: August 14, 2026

Respectfully submitted,

BKS Law Firm, PC

By:________________________________

JENNIFER T. BUCKMAN
ZACHARY C. CASTAGNOLA-JOHNSON

Attorneys for Defendant-Intervenor
CONTRA COSTA WATER DISTRICT